595 A.2d 1078

**Richard SHOFER**

v.

**The STUART HACK COMPANY et al.**

**No. 165, Sept. Term, 1990.**

Court of Appeals of Maryland.

Sept. 17, 1991.

Anthony P. Palaigos (Thomas A. Bowden, Blum, Yumkas, Mailman, Gutman & Denick, P.A., all on brief), Baltimore, for appellant.

Janet M. Truhe (Lee B. Zaben, Semmes, Bowen & Semmes, Linda M. Schuett, John J. Ryan, Frank, Bernstein, Conaway & Goldman, all on briefs), Baltimore, for appellees.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW and KARWACKI, JJ.

RODOWSKY, Judge.

This case presents issues of exclusive federal jurisdiction and of federal preemption of state law under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 through 1461. The action is brought by a retirement plan participant against a nonfiduciary consultant to the plan for loss, including liability for income taxes, interest and penalties, allegedly caused by tax advice negligently rendered by the consultant concerning loans from the plan.

## I

ERISA preemption is created by a section in that statute providing that, with certain exceptions, ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a) (1988).[1] This provision has been called "undoubtedly ... the most expansive preemption clause found in any federal statute." Conison, *The Federal Common Law of ERISA Plan Attorneys*, 41 Syracuse L.Rev. 1049, 1083 (1990). "State law" is defined in ERISA as "all laws, decisions, rules, regulations, or other State action having the effect of law." § 1144(c)(1). The Supreme Court has given the phrase "relate to" its "broad common-sense meaning, such that a state law 'relate[s] to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.' " *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728, 740 (1985) (quoting *Shaw v. Delta Air Lines*, 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490, 501 (1983)). Indeed, some courts hold that ERISA preempts state common law remedies even though the result leaves the plaintiff with no remedy under ERISA either. *See, e.g., Lee v. E.I. DuPont de Nemours & Co.*, 894 F.2d 755, 757–58 (5th Cir.1990) (state law action for negligent misrepresentation preempted, despite possible lack of remedy in ERISA, where retired employees sued former employer for additional benefits provided under early retirement plan adopted shortly after plaintiffs retired).

On the other hand, there are limits to ERISA preemption. The Supreme Court has stated that "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw*, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21. Although the relationships to plans that have come before the Supreme Court frequently have not been

---

1. Unless otherwise indicated, all statutory references are to Title 29, U.S.C.

"too tenuous, remote, or peripheral" to avoid preemption, there is a body of authority from other courts holding no preemption of state law claims that have *some* relationship to an ERISA benefit plan.

The subject matter jurisdictional issue in the instant matter involves § 1132(e)(1). It reads:

> "Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter [Protection of Employee Benefit Rights §§ 1001 through 1168] brought by the Secretary or by a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section."

The exception gives state and federal courts concurrent jurisdiction over a "civil action ... brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." § 1132(a)(1)(B).

## II

Petitioner, Richard Shofer (Shofer), is an automobile dealer. He is the sole stockholder and president of Catalina Enterprises, Inc. (Catalina), which trades as Crown Motors. In 1971 Catalina adopted a pension plan which qualified under the Internal Revenue Code. Shofer was and.is the plan's sole trustee.

Respondent, Stuart Hack (Hack), a Chartered Life Underwriter, is the president of respondent, The Stuart Hack Company (Hack Co.). Respondents are pension plan consultants. They prepared the Catalina plan and amendments thereto. Hack Co. acts as a professional plan administra-

tor, and it is the administrator of the Catalina plan.[2]  Respondents routinely rendered professional assistance to Catalina.  This included advising Shofer or Catalina as to the tax implications of transactions that they were contemplating.  That was a normal part of the business relationship between respondents, Shofer, and Catalina.

Sometime prior to August 9, 1984, Shofer had a telephone conversation with Hack concerning the use of funds in Shofer's account or accounts in the Catalina plan, either by way of a loan from the plan, or as security for a loan.  Hack replied in a four-paragraph, single-spaced, full-page letter of August 9, 1984.  Shofer's position in the instant litigation is that Hack failed to advise Shofer of the income tax consequences of borrowing from the plan.

In nine transactions between August 9, 1984, and September 30, 1986, Shofer borrowed $375,000 from the Catalina plan.  Shofer used the loan proceeds to repay loans from Catalina, t/a Crown Motors, and to purchase and refurbish a property in the Virgin Islands.

Subsequently, Catalina's and Shofer's accountants, Grabush, Newman & Company, P.A. (Grabush), advised Shofer of income tax liability based on those loans.  Shofer paid to the United States and to the State of Maryland for the years 1984, 1985 and 1986 income taxes, penalties, and interest totaling $120,428.19 because proceeds of the loans from the plan constituted income to him in those years.  Shofer also incurred other consequential expenses.

Shofer sued Hack and Hack Co. in the Circuit Court for Baltimore City.  Hack and Hack Co. impleaded Grabush as a third-party defendant.  Shofer's claims eventually were stated in a second amended complaint.  During the evolution of that pleading the parties engaged in discovery.

---

2.  "Administrator" is a defined term in ERISA.  It means "the person specifically so designated by the terms of the instrument under which the plan is operated; [or] the plan sponsor...."  § 1002(16)(A).

Shofer's second amended complaint is in eight counts. Counts I and II are Maryland law claims, sounding in tort and in contract, for malpractice. Count III alleges a special relationship of trust and confidence to have existed between Shofer and the respondents, giving rise to a fiduciary duty which was breached by the allegedly incomplete advice. Counts IV through VIII are expressly predicated on breaches of the ERISA plan. The compensatory damages sought under the ERISA counts are the same as those sought in the Maryland law causes of action.

In support of their motion to dismiss, respondents argued that the first three counts of the second amended complaint were predicated on Maryland common law which was preempted by ERISA. Thus, those counts did not state a claim upon which relief could be granted because the underlying substantive law relied on for the theory of the cause of action could not be applied to the claim. Respondents argued that the ERISA-based causes of action could be asserted only in a federal court. Respondents further submitted that, because all of the counts essentially involved a breach of fiduciary duty, the federal courts had exclusive subject matter jurisdiction over all of the counts. The parties, both in their memoranda filed in, and in their oral arguments to, the circuit court went well beyond the four corners of the second amended complaint. They made free use of facts contained in discovery which appeared in the circuit court record. The joint record extract in this Court contains discovery material and an affidavit. Accordingly, we shall treat respondents' motion to dismiss as one for summary judgment, governed by Maryland Rule 2–501. *See* Md.Rule 2–322(c).

The circuit court dismissed Shofer's complaint with prejudice in its entirety.[3] Shofer appealed to the Court of Special

---

**3.** After the circuit court's dismissal Shofer filed a complaint in the United States District Court for the District of Maryland. The district court granted summary judgment for Hack because the claim was barred by the ERISA statute of limitations, § 1113. *Shofer v. Stuart*

Appeals. We issued the writ of certiorari on our own motion prior to consideration of this matter by the Court of Special Appeals.

The docket of the Circuit Court for Baltimore City reflects that no judgment has ever been entered disposing of the third-party claim by respondents against Grabush. Nor was the circuit court asked to certify its dismissal of Shofer's second amended complaint as a final judgment pursuant to Maryland Rule 2–602. Thus, this case could be dismissed as a premature appeal. *See Estep v. Georgetown Leather Design*, 320 Md. 277, 577 A.2d 78 (1990). Nevertheless, we exercise our discretion under Maryland Rule 8–602(e)(1)(C) and hereby enter as a final judgment the judgment of the Circuit Court for Baltimore City dismissing all of Shofer's claims.

## III

For purposes of this appeal the respondents are not fiduciaries under the Catalina plan.[4]

Section 1002(21)(A), in relevant part, provides that

"a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."

---

*Hack Co.*, 753 F.Supp. 587 (D.Md.1991). We were advised at oral argument of this matter that the district court judgment has been appealed to the United States Court of Appeals for the Fourth Circuit.

4. Indeed, Shofer sought voluntarily to dismiss without prejudice Counts III through VIII of the second amended complaint, thereby eliminating all counts but those alleging Maryland common law, nonfiduciary duties. The consent of the other parties was required under Maryland Rule 2–506. That consent was not obtained.

Absent such discretionary authority, a person is not a plan fiduciary. *See* 29 C.F.R. § 2509.75–8, at 327 (1991).[5]

In the instant matter Hack, on deposition, said that he did not have control over, and exercised no discretion over, either the plan or the plan's assets. But it is not clear from the record precisely what Hack's responsibilities were. He clearly was a consultant to the plan. Both parties also

---

5. 29 C.F.R. § 2509.75–8 is a series of questions and answers promulgated by the Secretary of Labor relating to certain aspects of fiduciary responsibility under ERISA. It includes the following at ¶ D–2:

"Q: Are persons who have no power to make any decisions as to plan policy, interpretations, practices or procedures, but who perform the following administrative functions for an employee benefit plan, within a framework of policies, interpretations, rules, practices and procedures made by other persons, fiduciaries with respect to the plan:

(1) Application of rules determining eligibility for participation or benefits;

(2) Calculation of services and compensation credits for benefits;

(3) Preparation of employee communications material;

(4) Maintenance of participants' service and employment records;

(5) Preparation of reports required by government agencies;

(6) Calculation of benefits;

(7) Orientation of new participants and advising participants of their rights and options under the plan;

(8) Collection of contributions and application of contributions as provided in the plan;

(9) Preparation of reports concerning participants' benefits;

(10) Processing of claims;  and

(11) Making recommendations to others for decisions with respect to plan administration?

"A: No. Only persons who perform one or more of the functions described in section [1002(21)(A) ] with respect to an employee benefit plan are fiduciaries...."

Paragraph D–3 of the same regulation, however, reads in part:

"Q: Does a person automatically become a fiduciary with respect to a plan by reason of holding certain positions in the administration of such plan?

"A: Some offices or positions of an employee benefit plan by their very nature require persons who hold them to perform one or more of the functions described in section [1002(21)(A) ]. For example, a plan administrator or a trustee of a plan must, b[y] the very nature of his position, have 'discretionary authority or discretionary responsibility in the administration' of the plan within the meaning of section [1002(21)(A)(iii) ]. Persons who hold such positions will therefore be fiduciaries."

characterize him as a "plan administrator." Counsel for the respondents represented to the circuit court at one hearing in this matter that the respondents' role with respect to the Catalina plan was to "fill out forms ... provide annual reports to employees, that sort of thing."

There are appellate cases holding that certain professionals who gave advice to, or performed ministerial services for, ERISA plans were not fiduciaries. *See, e.g., Pappas v. Buck Consultants, Inc.*, 923 F.2d 531, 535–38 (7th Cir.1991) (actuary who gave bad advice to plan held not a fiduciary); *Anoka Orthopaedic Assocs. v. Lechner*, 910 F.2d 514, 517 (8th Cir.1990) (attorney who performed "ministerial tasks" not a fiduciary); *Painters of Philadelphia Dist. Council No. 21 Welfare Fund v. Price Waterhouse*, 879 F.2d 1146, 1151 (3d Cir.1989) (independent accounting firm that performed audits for ERISA plan not a fiduciary); *Yeseta v. Baima*, 837 F.2d 380, 385 (9th Cir.1988) (attorney for company who "reviewed" its plan not a fiduciary because he "did not exercise authority" over the plan). But there is "no *per se* rule that prevents professionals who render advice to an ERISA plan from becoming fiduciaries." *Pappas*, 923 F.2d at 538. *Compare Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985, 988 n. 5 (4th Cir.) (plan administrator is clearly a fiduciary), *cert. denied,* —— U.S. ——, 111 S.Ct. 512, 112 L.Ed.2d 524 (1990) *and U.S. Steel Mining Co. v. District 17, United Mine Workers*, 897 F.2d 149, 152 (4th Cir.1990) (same) *with Narda, Inc. v. Rhode Island Hosp. Trust Nat'l Bank*, 744 F.Supp. 685, 694–95 (D.Md.1990) (question of fact whether administrators were fiduciaries).

The record before us does not reveal enough about Hack's duties as "administrator" to resolve on summary judgment whether Hack was a fiduciary. Respondents' brief to us admits that "Hack's fiduciary status is not clear in the instant case...." Brief for Appellees, Stuart Hack

---

Respondents do not contend before us that they are fiduciaries of the Catalina plan as a matter of law.

and The Stuart Hack Company at 32. Under these circumstances there is a genuine dispute of material fact on this issue. Consequently, our analysis proceeds by treating the respondents as nonfiduciary consultants to the plan.

## IV

Respondents submit, and the circuit court necessarily concluded, that the Maryland law of negligence and contract, as the foundation for the claims asserted in Counts I and II, "relate[s] to [Catalina's] employee benefit plan," and is preempted by § 1144(a). Shofer contends that the Maryland law of contract and tort affects Catalina's benefit plan "in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21. The law of ERISA preemption has been called a "'morass,'" *Capital Mercury Shirt Corp. v. Employers Reinsurance Corp.*, 749 F.Supp. 926, 929 (W.D.Ark.1990), and a black hole which swallows up garden variety claims, *Jordan v. Reliable Life Ins. Co.*, 716 F.Supp. 582, 583 (N.D.Ala.1989), *modified*, 922 F.2d 732 (11th Cir.1991).

A recent illustration in the Supreme Court of preemption is *Ingersoll–Rand Co. v. McClendon*, —— U.S. ——, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). Texas recognized an abusive discharge action where the employer's motive was to defeat the employee's ERISA-protected pension rights. Because "[t]he Texas cause of action makes specific reference to, and indeed is premised on, the existence of a pension plan," the cause of action was preempted. —— U.S. at ——, 111 S.Ct. at 483.

*Mackey v. Lanier Collection Agency & Serv.*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), illustrates a relationship between state law and a plan which does not result in preemption. The creditor of a plan participant garnished credits held by plan trustees for the participant. The Court first held that ERISA preempted a special Georgia statute that exempted ERISA benefits from garnish-

ment. "The state statute's express reference to ERISA plans suffice[d] to bring it within the federal law's pre-emptive reach." *Id.* at 830, 108 S.Ct. at 2185. Next, the Court addressed whether the entire Georgia garnishment procedure was preempted, if used to seize ERISA benefits. Because specific provisions of ERISA contemplate judgments against plans, *e.g.*, in favor of a beneficiary for benefits, the Court reasoned that Congress must have intended for judgments to be enforceable by state law collection procedures, as provided by the Federal Rules of Civil Procedure. The Court further said:

"ERISA plans may be sued in a second type of civil action, as well. These cases—lawsuits against ERISA plans for run-of-the-mill state-law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan—are relatively commonplace. Petitioners ... concede that these suits, although obviously affecting and involving ERISA plans and their trustees, are not pre-empted by ERISA [§ 1144(a) ]."

486 U.S. at 833, 108 S.Ct. at 2187 (footnote omitted).

■ Out of the "morass" the decision which emerges as factually the most relevant to the case before us is *Painters of Philadelphia Dist. Council No. 21 Welfare Fund v. Price Waterhouse*, 879 F.2d 1146 (3d Cir.1989). The plaintiffs were trustees of an ERISA plan. In a federal district court they sued the accounting firm that had performed for the plan several of the yearly audits which are required by § 1023(a)(3)(A). Alleging that the auditors had failed to uncover fraud exceeding $1 million by the fund administrator, the plan trustees presented four different legal theories: (1) violation of duties expressly imposed by ERISA on plan fiduciaries; (2) breach of a duty of care implied from ERISA; (3) state law breach of contract; and (4) state law negligence. Dismissal of the complaint by the district court was affirmed. The appellate court held that the auditors were not fiduciaries, and the court would not imply a cause of action. The result was to relegate the plaintiffs to state court on their state law claims. Perhaps intending to

influence the future state court action, the United States Court of Appeals for the Third Circuit, in considered *dicta*, said:

> "We acknowledge appellants' argument that ERISA's broad preemption provision, 29 U.S.C. § 1144(a), preempts state professional malpractice claims as they relate to ERISA, but we are not persuaded by it.

> "[Here the Court quoted the passage, set forth above, from *Mackey v. Lanier Collection Agency & Serv.*]

> "We feel that professional malpractice actions brought by a plan are directly analogous to the situation in *Mackey*, and that, in the absence of an explicit corresponding provision in ERISA allowing a professional malpractice cause of action, Congress did not intend to preempt a whole panoply of state law in this area. Thus, we conclude that ERISA does not generally preempt state professional malpractice actions."

879 F.2d at 1153 n. 7. *See also Pappas v. Buck Consultants, Inc.*, 923 F.2d at 540 & n. 1 (in *dicta*, apparently agreeing with *Painters* that ERISA does not preempt certain state law claims for malpractice).

We agree with the foregoing reasoning and shall apply it here.

Neither the auditors in *Painters* nor the respondents here are fiduciaries. The state law liability of the auditors in *Painters* would not have turned on, and that of the respondents does not turn on, the construction, interpretation or application of ERISA or of a plan; rather, those liabilities depend on duties arising from the nonfiduciary relationships. But in *Painters* the plaintiff was the plan itself, and any recovery would have become an asset of the plan. That was not enough, however, for the state common law underlying the malpractice claims to "relate to" the plan. Here, Shofer is a plan participant, but he seeks to recover, for himself, personal funds expended for individual tax liabilities and consequential expenses. The state law claims of Counts I and II of Shofer's second amended complaint are

not as "related to" a plan as were the state law claims in *Painters.*

Most of the decisions which bear a factual analogy to the instant matter reach the same result as did *Painters. See Capital Mercury Shirt Corp. v. Employers Reinsurance Corp.,* 749 F.Supp. 926 (W.D.Ark.1990) (state law action against administrator for negligence in providing information to medical reinsurer not preempted, in part because ERISA would not provide a federal law remedy against a nonfiduciary administrator); *Quigley v. Unum Life Ins. Co.,* 688 F.Supp. 80 (D.Mass.1988) (state law claims against nonfiduciary insurer for incorrectly calculating amount of monthly annuity not preempted because relationship to pension plan too tenuous), *aff'd,* 887 F.2d 258 (1st Cir.1989); *Duffy v. Cavalier,* 215 Cal.App.3d 1517, 264 Cal.Rptr. 740 (1989) (state law action by trustees of plan against stockbrokers for breach of fiduciary duty in handling plan assets not preempted, in part because duty from broker to customer exists independently of relationship to the plan); *Sappington v. Covington,* 108 N.M. 155, 768 P.2d 354, 357–58 (Ct.App.1988) (state law action against insurance agents for negligently selecting an insolvent insurer not preempted because "grounded upon alleged conduct ... that has no reference to ERISA" and damages would not come from ERISA funds), *cert. denied,* 108 N.M. 115, 767 P.2d 354, *cert. denied,* 490 U.S. 1107, 109 S.Ct. 3159, 104 L.Ed.2d 1021 (1989).

The United States Court of Appeals for the Fourth Circuit in *Pizlo v. Bethlehem Steel Corp.,* 884 F.2d 116 (4th Cir.1989), pointed to a number of factors in that case which led the court to conclude that certain state law claims were not preempted. The plaintiffs had been terminated by their employer, allegedly in breach of an oral contract for employment to age sixty-two. These same facts were pleaded as negligent misrepresentation as well. The plaintiffs also contended that there had been an unauthorized amendment of the pension plan, but that claim was held to be preempt-

ed. The breach of contract and misrepresentation claims, however, were not preempted. The court reasoned:

> "The claims here would not submit Bethlehem to conflicting employer obligations and variable standards of recovery, determine whether any benefits are paid[,] nor directly affect the administration of benefits under the plan. The claims do not bring into question whether Plaintiffs are eligible for plan benefits, but whether they were wrongfully terminated from employment after an alleged oral contract of employment for a term. In their state law claims, the Plaintiffs seek from the corporation compensatory damages for wages and pension, health, life and disability benefits that they would have been entitled to had the alleged contract to work until age 62 not been breached. If the Plaintiffs prevail, the damages would be measured in part by the lost pension benefits the Plaintiffs would have received, but the pension trust itself would not be liable and the administrators of the pension plan would not be burdened in any way."

*Id.* at 120–21 (internal quotations and citation omitted). These factors apply with greater force to Shofer's state law claims. If Shofer is successful in this action, his damages will not be measured by a difference in plan benefits. Part of those damages will be measured by the obligation incurred for tax and interest, a figure derived from the Internal Revenue Code on the amounts borrowed from the Catalina plan, and part will be expenses consequential to that tax obligation.

Another reason why the dicta in *Painters* is persuasive is that, if the subject tax advice malpractice claim is sufficiently closely related to the Catalina plan to be preempted, there may well not be any remedy at all—not even if asserted under ERISA in an action timely filed in a federal court. This is because there can be a gap between the scope of ERISA remedies and the sweep of ERISA preemption.

Where the relationship between state law and a plan triggered preemption, courts have struggled with the prob-

lems created by this gap. In some cases, the courts have let the claim, recognized only under preempted state law, fall into the abyss. For example, in *Cefalu v. B.F. Goodrich Co.*, 871 F.2d 1290 (5th Cir.1989), the plaintiff sued under state law for breach of an alleged oral contract under which Goodrich promised that the plaintiff would receive certain retirement benefits if he left the company's employment and opened a Goodrich retail franchise. The Goodrich retirement plan did not provide for the promised benefits. The Fifth Circuit held that there was no ERISA-based remedy, because "an oral agreement cannot be the basis of a cause of action under ERISA," *id.* at 1297, and that the state law oral contract claim was preempted.

In other cases courts have approached the gap from the ERISA remedy rim, and attempted to narrow the gap by enlarging ERISA remedies. Enlargement has involved a creative approach to equitable remedies under ERISA, and the fashioning of a body of federal common law underlying ERISA.

An impetus for the equitable remedy approach is Justice Brennan's concurring opinion in *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). The lower courts had decided that ERISA preempted a cause of action, based on California law, for damages for emotional upset caused by negligent delay in processing a claim for benefits under an ERISA health plan. The Court held that no cause of action for negligent delay in claim processing was implied under ERISA. Justice Brennan, joined by three other members of the Court, pointed out that no cause of action had been asserted under § 1132(a)(3). That subsection recognizes a civil action brought

"by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

The concurring justices suggested that traditional trust-law remedies for breaches of fiduciary duties imposed by ERISA on plan administrators might be the basis for recovering extra-contractual damages as "appropriate equitable relief."

This suggestion was adopted by the United States Court of Appeals for the Sixth Circuit in *Warren v. Society Nat'l Bank*, 905 F.2d 975 (6th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2256, 114 L.Ed.2d 709 (1991). The plaintiff, a retirement plan participant, directed the trustee to "roll over" the participant's assets from the plan into a self-directed individual retirement account. The trustee did this in four distributions, two in one calendar year and the other two in the succeeding calendar year. As a result the plaintiff lost the benefit of income tax deferral on $168,000, and was subjected to state and federal tax liabilities of $87,000. The participant sued in a federal court, asserting an ERISA based claim. His complaint was dismissed. The appellate court, sitting in a three judge panel, held that this claim for extra-contractual damages could be recognized against a fiduciary as an equitable remedy under § 1132(a)(3). One judge concurred, but questioned whether, at trial, it could be proved that the fiduciary's duty extended to minimizing the exposure of plan participants to taxation. One judge dissented.

The approach in *Warren v. Society Nat'l Bank* does not apply to the case before us because of the genuine dispute over whether respondents are fiduciaries.

Enlargement of ERISA remedies by federal common law is illustrated in Judge Murnaghan's opinion for the court in *Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985 (4th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 512, 112 L.Ed.2d 524 (1990). The plaintiff insurance company administered the employer's self-funded benefit plan. The defendant was a participant who allegedly had been overpaid medical benefits. Thus, prior to ERISA the claim would have been a garden variety, state law based action for restitution that would inure to the plan. The court held

that this claim, although preempted if asserted under state law, was recognized by federal common law. As such it was within the federal question subject matter jurisdiction of the federal courts. The court cautioned, however, that federal common law would be applied only to issues of "central concern" to ERISA. Whether the respondents in the case before us had, and breached, a duty to advise Shofer of the tax consequences of borrowing from the Catalina plan is not of "central concern" to the policies underlying, or administration of, ERISA.

Where, as here, the claim is against a nonfiduciary, some courts approach the problem from the preemption rim and close the gap by holding that there is no preemption of state law because there is no ERISA remedy against a nonfiduciary. *See, e.g., Southern Cal. Meat Cutters Unions & Food Employers Pension Trust Fund v. Investors Research Co.,* 687 F.Supp. 506, 509–10 (C.D.Cal.1988); *Munoz v. Prudential Ins. Co. of Am.,* 633 F.Supp. 564, 570–72 (D.Colo.1986). Other courts hold that § 1132(a)(3) allows equitable relief against fiduciaries and nonfiduciaries, so that claims against a nonfiduciary are preempted. *See, e.g., Gibson v. Prudential Ins. Co. of Am.,* 915 F.2d 414, 417–18 (9th Cir.1990) (nonfiduciary administrator); *Casper Air Serv. v. Sun Life Assurance Co. of Canada,* 752 F.Supp. 1005, 1009 (D.Wyo.1990) (same).

The respondents in the instant matter rely on *Casper Air.* That was an action by plan trustees who had become liable to the plan to cover losses allegedly caused by the defendant's failure accurately to calculate lump sum benefits due to terminated employees, by the failure to terminate the plan upon notice from the trustees, and by under-funding of the plan's liabilities. Assuming, *arguendo,* that *Casper Air* correctly decides the scope of the remedy under § 1132(a)(3), the negligence of the administrator in that case is more closely related to the plan than is the claim of negligent tax advice to a participant concerning borrowings from a plan that is presented here.

This nonexhaustive survey demonstrates the wisdom of the *Painters* rationale. When respondents' nonfiduciary status is considered along with the conduct at issue and the type of damages sought, we do not believe that Congress could have intended to preempt this particular action. The conduct at issue here is simply a failure to give competent tax advice about an ERISA distribution. If Congress intended to preempt such conduct against nonfiduciaries, then arguably a tax adviser with *no* relationship to an ERISA plan who negligently advised a client that an ERISA distribution was nontaxable would be immune from liability. Moreover, the damages sought are simply the amounts Shofer personally expended because of the allegedly negligent failure to advise. It is hard to imagine that Congress intended to preempt an action in which all potential damages would be paid by a nonfiduciary and would not inure to a plan. Where the alleged negligence of a nonfiduciary plan administrator is as removed from the plan as here, and "in the absence of an explicit corresponding provision in ERISA allowing a professional malpractice cause of action, Congress did not intend to preempt a whole panoply of state law in this area." *Painters*, 879 F.2d at 1153 n. 7.

## V

The respondents have argued that certain features of this case make Shofer's claim, based on Maryland malpractice law, related to the plan. Our holding in Part IV, *supra*, that the malpractice claims in Counts I and II are not preempted, denies preemptive effect to those features, with one exception, to be discussed in Part V(B), *infra*.

### A

Respondents' most sweeping contention is that the malpractice claim is preempted because it was necessary for Hack to read the Catalina plan in order to determine whether borrowing by a participating employee from one or more of that employee's accounts was even permitted. That a state law claim involves reading of the plan cannot be the

litmus test for preemption. There was no preemption of the Georgia garnishment procedure in *Mackey v. Lanier Collection Agency & Serv.*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 despite the fact that one would have to read a plan in order to determine the amount which a participant could withdraw from the plan at, and, perhaps, following service of the garnishment.

Respondents also argue that their conduct is regulated by ERISA. We have shown in Part III, *supra*, that this record does not support a holding, as a matter of law, that the respondents occupy a fiduciary relationship to the plan. Viewing the respondents as nonfiduciaries, their conduct, particularly with respect to tax advice to a participant, is not regulated by ERISA.

Shofer's malpractice claim, respondents further submit, affects the plan assets, so that preemption operates. By this contention respondents do not mean that any recovery by Shofer will be from plan assets, as opposed to assets of the respondents, but that Shofer's borrowings from the plan in some way have jeopardized, imperiled or adversely affected the Catalina plan. Assuming, *arguendo*, that such a relationship between a state law claim and a plan preempts the claim, the record extract in this case does not demonstrate such a relationship beyond genuine dispute as to material fact.

### B

The respondents urge preemption of the malpractice claims because they attempt to include, or preserve, contingent damages by way of additional taxes that might be imposed by 26 U.S.C. § 4975 (1988), if the Internal Revenue Service were to rule that the loans to Shofer were "prohibited transactions" as therein defined. The argument is based on a paragraph in the second amended complaint which contains allegations incorporated by reference into Counts I and II. Those allegations are:

"Because these borrowings were in fact taxable to Shofer as income and also constituted prohibited transactions and premature distributions, Shofer incurred and continues to incur substantial federal and state tax liabilities and risk of additional liabilities as a result of these transactions."

In answers to interrogatories requesting that the damages be specified, Shofer included in his answer a category headed "Contingent liabilities," which included: "[d]isqualification of plan"; "[c]ost of 'undoing' prohibited transactions"; and "[e]xcise tax on prohibited transactions." Further, Shofer's expert witness on liability, in his deposition, referred to the potential of plan disqualification that would generate substantial tax consequences which "would visit themselves upon [Shofer] and upon the other plan participants."

At oral argument in this Court counsel for Shofer said that the respondents' argument concerning prohibited transactions was based on the expert's deposition. Shofer's counsel submitted that "if the Court reads Counts I and II, there is no mention of prohibited transactions. There is no mention of excise taxes for prohibited transactions." We consider Shofer's counsel's statement to be a concession limiting the scope of the damages claimed in Counts I and II so as to exclude the three above-described "contingent liabilities." As so limited, potential plan disqualification as a basis for respondents' argument is not in the case.

## VI

Shofer also argues that the Circuit Court for Baltimore City had concurrent jurisdiction over Counts IV through VIII,[6] which are styled as breaches of various duties of care under the terms of the ERISA plan itself. The theory in these counts is most clearly articulated in

---

6. Shofer makes no argument that Count III, styled as a "Breach of fiduciary duty" under Maryland law, is not preempted by ERISA. We therefore treat that Count as preempted.

Count VII, which alleges that under ¶ 11.2(c) of the plan, "all representatives of Catalina 'shall use ordinary care and diligence in the performance of their duties pertaining to the Plan....' " These allegations, Shofer submits, seek "to enforce his rights under the terms of the plan" within the meaning of § 1132(a)(1)(B), and are therefore within the concurrent subject matter jurisdiction of state courts pursuant to § 1132(e).

We read Shofer's argument with respect to Counts IV through VIII essentially as an alternative pleading; that is, Shofer argues that even if Hack is determined to be an ERISA fiduciary, a state court has concurrent jurisdiction under § 1132(a)(1)(B) to enforce breaches of duties of care so long as those duties are written into the terms of the plan. This argument proves too much, because it could make any claim for breach of ERISA fiduciary duties subject to concurrent jurisdiction. Section 1104(a)(1)(B) provides that an ERISA fiduciary

> "shall discharge his duties with respect to a plan ... with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

This provision, which preempts state fiduciary-obligation law relating to ERISA fiduciaries, creates duties for which liability is imposed by § 1109(a).[7] A civil action for appropriate relief under § 1109 is a civil action recognized by

---

**7.** Section 1109(a) in relevant part reads:
"Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter [Protection of Employee Benefit Rights, §§ 1001 through 1168] shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

§ 1132(a)(2), which § 1132(e)(1) assigns to exclusive federal subject matter jurisdiction. If the plan draftsperson can create "rights under the terms of the plan," for § 1132(a)(1)(B) purposes, by referring in the plan to duties on fiduciaries that are already imposed by ERISA, drafting could negate the deliberate allocation to exclusive federal jurisdiction of cases based on a fiduciary's breach of the duty to use due care. This conferral of exclusive subject matter jurisdiction on the federal courts seems clearly to be part of the congressional intent to have a nationally uniform standard of care applied to ERISA fiduciaries. Breach of a duty of care stated in a plan does not give rise to an action "to enforce ... rights under the terms of the plan" within the meaning of § 1132(a)(1)(B).

## VII

We shall therefore affirm the judgment of the Circuit Court for Baltimore City on Counts III through VIII of the second amended complaint, vacate that judgment as to Counts I and II, on which the damages sought are limited as aforesaid, and remand this case for further proceedings, consistent with this opinion, on Counts I and II only.

JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED IN PART AND VACATED IN PART. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS, CONSISTENT WITH THIS OPINION, ON COUNTS I AND II ONLY OF THE SECOND AMENDED COMPLAINT. COSTS TO BE PAID ONE–HALF BY THE PETITIONER AND ONE–HALF BY THE RESPONDENTS.