**M. LaVon BARRETT a/k/a LaVon M. Barrett, Plaintiff–Appellant,**

v.

**Craig C. HAY, Holben, Boak, Cooper & Co., Certified Public Accountants, a Colorado professional corporation; Craig S. Ciarlelli, Hinds Financial Group, Inc., a Colorado corporation; Donald W. Hall, and Prudential Securities, Inc. f/k/a Prudential–Bache Securities, Inc., a Delaware corporation, Defendants–Appellees.**

No. 93CA2140.

Colorado Court of Appeals, Div. V.

March 9, 1995.

Martin & Mehaffy, Joel C. Maguire, Boulder, for plaintiff-appellant.

Hall & Evans, L.L.C., John D. Phillips, LaDonne Bush, Denver, for defendants-appellees Craig C. Hay and Holben, Boak, Cooper & Co.

Treece, Alfrey & Musat, P.C., Thomas N. Alfrey, Alison F. Kyles, Denver, for defendants-appellees Craig S. Ciarlelli and Hinds Financial Group, Inc.

Kutak Rock, Cassandra G. Sasso, Denver, Kutak Rock, Joseph A. Ingrisano, Gilbert W. Boyce, Washington, DC, for Donald W. Hall and Prudential Securities, Inc.

Opinion by Judge KAPELKE.

Plaintiff, LaVon Barrett, appeals from the summary judgment entered in favor of defendants, Craig C. Hay (Hay); Holben, Boak, Cooper & Co. (HBC); Craig S. Ciarlelli (Ciarlelli); Hinds Financial Group, Inc. (HFG); Donald W. Hall (Hall); and Prudential Securities, Inc. (Prudential). The trial court entered summary judgment on the ground that plaintiff's professional negligence and negligent misrepresentation claims against defendants were preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, et seq. (1988). We reverse and remand for further proceedings.

According to plaintiff's submissions in response to the motions for summary judgment, the factual background of this action is as follows. Hay, an accountant employed by HBC, had provided accounting services and financial and tax advice to plaintiff, plaintiff's family, and the family corporation for several years. Hall, a stockbroker and "financial consultant" with Prudential, performed brokerage services for plaintiff, her family, and the family corporation for over 15 years. In 1988, the family hired Ciarlelli, who was employed by HFG, to provide them with financial and tax planning services.

Plaintiff's deceased husband, Stanley L. Barrett, had been the sole participant in the Stan Barrett, Inc. Amended and Restated Retirement Plan and Trust, the retirement plan for the family corporation. This plan was terminated in August 1987 shortly after Mr. Barrett's death, and a distribution was made to plaintiff as surviving spouse. Plaintiff placed the distribution into an individual retirement account (IRA) under the management of Hall.

At the recommendation of Ciarlelli, and with the knowledge of Hay and Hall, the family corporation created a Money Purchase Pension Plan and Trust (the Plan). The Plan was a qualified plan under ERISA.

Ciarlelli and HFG assisted the family in establishing the Plan and thereafter entered into a Pension Administrative Services Contract with the Plan. Pursuant to that contract, Ciarlelli and HFG provided various administrative services to the Plan. Plaintiff's son was named as the trustee of the Plan, and the family corporation was designated as the Plan Administrator.

In 1989, the Barrett family was presented with an opportunity to purchase a farm. In connection with the purchase, plaintiff transferred funds from her IRA to the Plan, which then purchased the farm with those funds. Additional funds were later transferred from plaintiff's IRA to the Plan during 1989 and

1990. The total amount transferred from the IRA to the Plan was well over one million dollars. However, under Internal Revenue Service regulations, a rollover from an individual retirement account to a qualified plan is not permissible if the source of the funds in the individual's IRA was a death benefit from a qualified plan that had been maintained by the deceased spouse. Thus, the transfers were deemed improper by the IRS and gave rise to a tax liability for plaintiff.

In June 1991, plaintiff learned of the taxability of the transfers. She had to file amended tax returns for the years 1989 and 1990 and pay nearly $500,000 in additional taxes and interest for those years.

Plaintiff claims that the transfers from her IRA to the Plan were made in reliance upon representations of Hay, Ciarlelli, and Hall that the transfers were proper rollovers and would not create a tax liability for plaintiff or otherwise adversely affect her. Hence, she sought recovery for her additional tax liability.

## I.

Plaintiff contends that the trial court erred in concluding that her claims are preempted by ERISA. We agree.

■ At the outset, we note that summary judgment is a drastic remedy and should be granted only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Roberts v. Holland & Hart,* 857 P.2d 492 (Colo.App.1992).

■ In reviewing the propriety of a summary judgment, an appellate court must apply the principle that the moving party has the burden of establishing the lack of a triable factual issue, and all doubts as to the existence of such an issue must be resolved against the moving party. *Peterson v. Halsted,* 829 P.2d 373 (Colo.1992).

## A.

The relevant portion of the ERISA preemption statute states that:

[T]he provisions of this subchapter and subchapter III shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan....

29 U.S.C. § 1144(a) (1988) (emphasis added).

■ Under ERISA, a civil action may be brought "by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title." 29 U.S.C. § 1132(a)(2) (1988). Section 1109 imposes personal liability on fiduciaries for breaches of their fiduciary duties to a plan. 29 U.S.C. § 1109 (1988). Thus, ERISA preempts state law claims which arise directly or indirectly from the administration of a plan by plan fiduciaries. *Gibson v. Prudential Insurance Co.,* 915 F.2d 414 (9th Cir.1990); *Nealy v. U.S. Healthcare HMO,* 844 F.Supp. 966 (S.D.N.Y. 1994).

Plaintiff contends that defendants are not ERISA fiduciaries, even though they may have owed certain fiduciary duties to her. Hall, Hay, HBC, and Prudential acknowledge that they were not fiduciaries of the Plan. Ciarlelli and HFG, however, assert that they *were* Plan fiduciaries and that, because plaintiff's claims arise from their administration of the Plan, such claims are preempted.

■ 29 U.S.C. § 1002(21)(A) (1988) provides in relevant part that:

A person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

One who lacks such discretionary authority is not a plan fiduciary. *Painters of Philadelphia District Council v. Price Waterhouse,* 879 F.2d 1146 (3d Cir.1989); *Shofer v. Stuart Hack Co.,* 324 Md. 92, 595 A.2d 1078 (1991), *cert. denied,* 502 U.S. 1096, 112 S.Ct. 1174, 117 L.Ed.2d 419 (1992).

The Department of Labor's guidelines for interpreting ERISA's fiduciary definition state that "attorneys, accountants, actuaries,

and consultants performing their usual professional functions will ordinarily not be considered fiduciaries." Interpretive Bulletin 75–5, 29 C.F.R. § 2509.75–5 (1987). The "power to act for the plan is essential to status as a fiduciary under ERISA." *Associates in Adolescent Psychiatry v. Home Life Insurance Co.*, 941 F.2d 561, 570 (7th Cir. 1991), *cert. denied*, 502 U.S. 1099, 112 S.Ct. 1182, 117 L.Ed.2d 426 (1992).

■ While lawyers, accountants, and financial advisors may render services to employers, plan trustees, and plan beneficiaries, their roles will not generally include discretionary decision-making authority over the plan or plan assets. Thus, a person "rendering professional services to a plan is not a fiduciary [to the plan] so long as he does not exercise any authority over the plan 'in a manner other than by usual professional functions.'" *Mertens v. Hewitt Associates*, 948 F.2d 607, 610 (9th Cir.1991), *aff'd*, — U.S. ——, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993).

■ In their contract with the Plan, Ciarlelli and HFG expressly disclaimed any fiduciary relationship with the Plan. Nevertheless, in urging their preemption position, they argue here that they *were* fiduciaries. The trial court did not determine the issue, instead concluding that even if these defendants were nonfiduciaries, the claims against them were preempted.

The parties disagree about the scope of these defendants' duties with respect to providing "administrative services" to the Plan and as to whether plaintiff's claims relate to their performance of those duties. Because there is a genuine dispute of material fact on this issue, the fiduciary or nonfiduciary status of Ciarlelli and HFG may not be resolved based on the record before us.

Accordingly, the summary judgment in favor of Ciarlelli and HFG based on ERISA preemption cannot stand, and the matter must be remanded to the trial court for further proceedings. If the court ultimately determines that these defendants are Plan fiduciaries, the claims against them are preempted. However, if the trial court determines that Ciarlelli and HFG are not ERISA fiduciaries, for the reasons discussed below, the claims against them are not preempted by ERISA.

## B.

Before preemption will be found, three requirements must be met: "There must be a state law, an employee benefit plan, and the state law must 'relate to' the employee benefit plan." *National Elevator Industries, Inc. v. Calhoon*, 957 F.2d 1555, 1557 (10th Cir.), *cert. denied*, — U.S. ——, 113 S.Ct. 406, 121 L.Ed.2d 331 (1992).

Here, there is no dispute that plaintiff's claims are based on state law and that the Plan is an employee benefit plan under ERISA. The issue is whether plaintiff's state law claims "relate to" the Plan.

A law " 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490, 501 (1983).

■ We recognize that the ERISA preemption provision is "deliberately expansive" and that the term "relate to" is to be given its "broad common-sense meaning." *Settles v. Golden Rule Insurance Co.*, 927 F.2d 505, 508 (10th Cir.1991). Despite this broad construction, however, the scope of ERISA preemption is not unlimited. *Houdek v. Mobil Oil Corp.*, 879 P.2d 417 (Colo.App.1994). Analysis of the legion of cases interpreting the "relate to" test reveals that the term has become, as one court described it, a "semantic gremlin." *Industrial Technical Services v. Phoenix Home Life Mutual Insurance Co.*, 866 F.Supp. 48, 50 (D.Mass.1994).

■ Some state actions affect an employee benefit plan in "too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw v. Delta Air Lines, Inc., supra*, 463 U.S. at 100 (fn. 21), 103 S.Ct. at 2901 (fn. 21), 77 L.Ed.2d at 503; *see also Houdek v. Mobil Oil Corp., supra; Hospice of Metro Denver v. Group Health Insurance of Oklahoma, Inc.*, 944 F.2d 752 (10th Cir.1991). Thus, ERISA does not preempt claims that are only "tangentially involved with a benefit plan." *Settles v.*

*Golden Rule Insurance Co., supra,* 927 F.2d at 509.

The "bugaboo," as one court noted, "is the language itself":

> In some cosmic sense, just about everything might be said to 'relate to' everything else. But ERISA preemption ends somewhere; the question is where.

*Industrial Technical Services v. Phoenix Home Life Mutual Insurance Co., supra,* 866 F.Supp. at 50 (the court also suggested that the words "relate to" should be "exiled from the terminology of the law and returned to their original source, presumably somewhere in southern California").

The United States Court of Appeals for the Tenth Circuit has recognized four categories of state laws which are preempted because they "relate to" ERISA plans:

> First, laws that regulate the type of benefits or terms of ERISA plans. Second, laws that create reporting, disclosure, funding, or vesting requirements for ERISA plans. Third, laws that provide rules for the calculation of the amount of benefits to be paid under ERISA plans. Fourth, laws and common-law rules that provide remedies for misconduct growing out of the administration of the ERISA plan.

*National Elevator Industry, Inc. v. Calhoon, supra,* 957 F.2d at 1558–59; *see also Aetna Life Insurance Co. v. Borges,* 869 F.2d 142 (2d Cir.), *cert. denied,* 493 U.S. 811, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989).

■ In contrast, laws of general application that involve traditional areas of state regulation and do not "affect 'relations among the principal ERISA entities—the employer, the plan, the plan fiduciaries, and the beneficiaries'" are often found not to "relate to" an ERISA plan. *National Elevator Industries, Inc. v. Calhoon, supra,* 957 F.2d at 1559; *see also Houdek v. Mobil Oil Corp., supra.*

What triggers ERISA preemption is "not just any indirect effect on administrative procedures, but rather an effect on the primary administrative functions of benefit plans, such as determining an employee's eligibility for a benefit and the amount of that benefit."

*Aetna Life Insurance Co. v. Borges, supra,* 869 F.2d at 146–47. So long as a state law does not affect the structure, administration, or type of benefits provided by an ERISA plan, "the mere fact that the [law] has some economic impact on the plan does not require that the [law] be invalidated." *Hospice of Metro Denver, Inc. v. Group Health Insurance of Oklahoma, Inc., supra,* 944 F.2d at 754.

■ Thus, ERISA does not preempt state professional negligence claims against nonfiduciaries arising from transactions involving a plan, as long as the defendants did not assume management or administrative responsibilities. *See Airparts Co. v. Custom Benefit Services of Austin, Inc.,* 28 F.3d 1062 (10th Cir.1994); *Painters of Philadelphia District Council v. Price Waterhouse, supra; Horton v. Cigna Individual Financial Services,* 825 F.Supp. 852 (N.D.Ill.1993); *Pension Plan of Public Service Co. v. KPMG Peat Marwick,* 815 F.Supp. 52 (D.N.H.1993); *Richards v. Union Labor Life Insurance Co.,* 804 F.Supp. 1101 (D.Minn.1992); *Anoka Orthopaedic Associates v. Mutschler,* 773 F.Supp. 158 (D.Minn.1991); *Profit Sharing Trust v. Lampf,* 267 N.J.Super. 174, 630 A.2d 1191 (1993); *Shofer v. Stuart Hack Co., supra.*

To determine whether ERISA preempts plaintiff's claims, we must consider "whether the claim arises under a law representing a traditional exercise of state authority, whether invoking the state law would affect relations between the principal ERISA entities involved, and whether the state law claims would have only an incidental effect on the ERISA plan." *Houdek v. Mobil Oil Corp., supra,* 879 P.2d at 422.

In *Shofer v. Stuart Hack Co., supra,* the plaintiff was the sole shareholder and president of the employer and the trustee of the employer's qualified pension plan. Plaintiff hired the defendants, who were non-fiduciary pension plan consultants, to act as plan administrators and to render professional assistance to the employer, including advice as to the tax consequences of certain transactions. Plaintiff alleged that defendants failed to advise him of the income tax consequences of

borrowing from the plan and that, as a result of such loans, he was required to pay substantial additional income tax, penalties, and interest. Plaintiff asserted a number of claims, including state law claims for malpractice, and defendants argued that these claims were preempted by ERISA. The Maryland Court of Appeals rejected defendants' contention.

The *Shofer* court premised its rejection of ERISA preemption on its conclusion that defendants' liability did not turn on the "construction, interpretation or application of ERISA or of a plan; rather, those liabilities depend on duties arising from the non-fiduciary relationships." *Shofer v. Stuart Hack Co., supra,* 595 A.2d at 1083.

We find that court's analysis both persuasive and apposite to the situation here:

> When respondents' nonfiduciary status is considered along with the conduct at issue and the type of damages sought, we do not believe that Congress could have intended to preempt this particular action. The conduct at issue here is simply a failure to give competent tax advice about an ERISA distribution. If Congress intended to preempt such conduct against nonfiduciaries, then arguably a tax adviser with *no* relationship to an ERISA plan who negligently advised a client that an ERISA distribution was nontaxable would be immune from liability. Moreover, the damages sought are simply the amounts Shofer personally expended because of the allegedly negligent failure to advise. It is hard to imagine that Congress intended to preempt an action in which all potential damages would be paid by a nonfiduciary and would not inure to a plan. Where the alleged negligence of a nonfiduciary plan administrator is as removed from the plan as here, and 'in the absence of an explicit corresponding provision in ERISA allowing a professional malpractice cause of action, Congress did not intend to preempt a whole panoply of state law in this area.'

*Shofer v. Stuart Hack Co.,* 595 A.2d at 1086 (citing *Painters of Philadelphia District Council v. Price Waterhouse, supra,* 879 F.2d at 1153 (fn. 7) (holding that "ERISA does not generally preempt state professional malpractice actions.")).

The court in *Horton v. Cigna Individual Financial Services, supra,* undertook a similar analysis. There, the defendant had been retained to provide administrative and actuarial services to a company pension plan. Plaintiff, the principal shareholder and president of the company, alleged that defendant's negligence had caused the plan to become underfunded. Plaintiff paid the deficiency personally, thereby preventing the plan from being rendered insolvent and its beneficiaries from being denied benefits.

The court rejected defendant's claim that plaintiff's breach of contract and negligent misrepresentation claims were preempted by ERISA and concluded that:

> Plaintiff is asserting no claims under ERISA, and all parties concede plaintiff has no standing to do so. Plaintiff has brought this action in her own behalf, not on behalf of the Plan, and any damages received will go to the plaintiff and not the Plan. The outcome of the law suit would not affect the Plan, as the Plan would not be liable for any damages and could not have its administration in any way burdened by any possible outcome. The plaintiff will clearly not be subject to any conflicting obligations, and there will be no determination of whether any benefits are due to any party. Further, the plaintiff's claims, which amount to professional malpractice, are claims that are traditionally covered by state law. The nature of the plaintiff's claims are not different than they would be if based on poor professional advice given in any other business context.... Redressing professional malpractice claims in no way conflicts with the provisions and policies of ERISA.

*Horton v. Cigna Individual Financial Services, supra,* 825 F.Supp. at 859; *see also Richards v. Union Labor Life Insurance Co., supra.*

Finally, in *Airparts Co. v. Custom Benefit Services of Austin, Inc., supra,* the United States Court of Appeals for the Tenth Circuit reversed the district court decision (on which the trial court in this case relied) that plaintiff's claims were preempted. There, the

plaintiffs, who were the employer and the trustees of a pension plan, asserted state law claims of negligence, indemnity, and fraud against a non-fiduciary consultant to the plan administrators. Plaintiffs alleged that the consultant failed to give timely advice concerning the effects on the plan of recent federal legislation, improperly calculated pension benefits, proposed and drafted a useless plan amendment, and deliberately concealed from plaintiffs the cost of the amendment and its ultimate uselessness.

In rejecting defendant's assertion that plaintiffs' claims were preempted by ERISA, the court concluded that:

> The state laws involved do not regulate the type of benefits or terms of the plan; they do not create reporting, disclosure, funding or vesting requirements for the plan; they do not affect the calculation of benefits; and they are not common law rules designed to rectify faulty plan administration.... Similarly, plaintiffs are not employees resorting to state law to avail themselves of an alternative cause of action to collect benefits, nor do the state laws here specifically apply to ERISA plans or interfere with the calculation of benefits.

*Airparts Co. v. Custom Benefit Services of Austin, Inc., supra,* 28 F.3d at 1065.

■ Plaintiff's claims here, like those of the plaintiffs in *Shofer, Horton,* and *Airparts, supra,* do not disturb the administration of a pension plan, the calculation of benefits, or the determination of entitlement to benefits. Her claims do not and will not have any effect on the relations among the Plan beneficiaries, the Plan administrator and the trustee, or on the structure, administration, or type of benefits provided by the Plan.

The claims are not based on any rights under the Plan or on any asserted breach of the Plan's terms. Nor do they constitute an effort to enforce or modify the terms of the Plan or to compel a determination of whether any benefits are due under the Plan. Further, there is no threat that allowing this suit to go forward would subject the Plan administrators to any conflicting obligations or regulations which would destroy the structural uniformity of the ERISA scheme.

Moreover, the liability of defendants has no relation to ERISA and does not depend upon the fact that the Plan is governed by ERISA. The tax liability created by the improper transfers from the IRA to the Plan arose from provisions in the Internal Revenue Code, and the taxation of the transfers would have occurred regardless of whether the plan was governed by ERISA.

In addition, plaintiff's claims do not fall into any of the four categories of state laws which are generally found to be preempted because they "relate to" ERISA plans. Specifically, her claims do not involve laws that: (1) regulate the type of benefits or terms of the Plan; (2) create reporting, disclosure, funding, or vesting requirements for the Plan; (3) provide rules for the calculation of the amount of benefits to be paid under the Plan; or (4) provide remedies for misconduct arising out of the administration of the Plan. *See National Elevator Industry, Inc. v. Calhoon, supra.*

Further, plaintiff's claims do not differ in their nature from claims based on negligent professional advice given in any other business context. If defendants had provided advice to plaintiff in a general estate planning or non-ERISA trust context, rather than in connection with an ERISA plan, her claims would have been the same. The only relationship plaintiff's claims have to ERISA is that the transferee entity happens to be governed by ERISA. That "simple fact is not enough to preempt a whole body of state law." *Profit Sharing Trust v. Lampf, supra,* 630 A.2d at 1199; *see also Horton v. Cigna Individual Financial services, supra.*

While we recognize that defendants' alleged conduct influenced the administration of the Plan in the respects that the Plan assets were frozen and the transferred funds were distributed to plaintiff in order to avoid disqualification of the Plan, we nevertheless conclude that those effects on the administration of the Plan were too peripheral to warrant preemption.

■ It is not the consequences of the allegedly negligent *conduct* that determine whether state law claims are preempted, but

rather, the impact of the *claims* on the administration of the Plan. *Cf. Horton v. Cigna Individual Financial Services Co., supra* (plaintiff's professional malpractice claims not preempted despite the fact that defendants' negligent conduct would have caused the plan to be underfunded and jeopardized beneficiaries' benefits if plaintiff had not personally paid the deficiency); *Richards v. Union Labor Life Ins. Co., supra* (malpractice claims not preempted even though actuary's negligent advice caused ERISA plan to be severely underfunded and required plaintiffs to pay benefits in excess of the funds available in the plan).

Here, although defendants' alleged negligence caused the Plan administrators to take certain actions they would not have had to take but for defendants' conduct, the outcome of plaintiff's claims themselves will not affect the continuing administration of the Plan, impose additional duties on Plan administrators, or otherwise have a lasting effect on the relationship between the principal ERISA entities and the Plan participants.

■ Finally, the touchstone in determining whether state laws are preempted by ERISA is the congressional purpose in enacting ERISA. *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987); *Hospice of Metro Denver, Inc. v. Group Health Ins. of Oklahoma, Inc., supra.* The purpose of ERISA is:

> [T]o protect ... participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

29 U.S.C. § 1001(b); *see also Shaw v. Delta Air Lines, Inc., supra.*

■ Correspondingly, the purpose of ERISA preemption is twofold: to protect "the interests of employees and their beneficiaries in employee benefit plans" and to ensure that plans and plan sponsors are subject to a uniform body of benefit law by minimizing the administrative and financial burden of "complying with conflicting directives among States or between States and the Federal Government." *Monarch Cement Co. v. Lone Star Industries, Inc.,* 982 F.2d 1448, 1453 (10th Cir.1992); *see also Industrial Technical Services v. Phoenix Home Life Mutual Insurance Co., supra,* 866 F.Supp. at 50 (the "central concern" of ERISA preemption is the "preservation of the 'administrative integrity' of the plan, particularly 'uniformity with respect to regulation of activities' surrounding the plan.").

Here, as in *Monarch Cement Co. v. Lone Star Industries, Inc., supra,* no conflicting directives exist, and plaintiff's claims do not threaten a Plan beneficiary's entitlement to benefits. Thus, ERISA preemption here would "not serve the purpose for which ERISA's pre-emption provision was enacted." *Monarch Cement Co. v. Lone Star Industries, Inc., supra,* 982 F.2d at 1454; *see also Richards v. Union Labor Life Insurance Co., supra,* 804 F.Supp. at 1106 ("allowing a malpractice claim to proceed will not undermine the congressional purpose of uniformity. To the contrary, to bar such an action would assume a congressional purpose that is far from clear.").

*Houdek v. Mobil Oil Corp., supra,* does not compel a different result. There, plaintiffs were former employees of Mobil and were participants in Mobil's retirement plan. They alleged that, based on improper plan benefit information supplied to them by the plan and its trustees, they had elected early retirement to qualify for a lump sum payment. They later learned that they could have received the payment without having had to retire.

A division of this court concluded that, although plaintiffs' claims for common law fraud, negligent misrepresentation, civil conspiracy, and interference with contract represented a traditional exercise of state authority not designed specifically to affect pension plans, they were nonetheless preempted because they would have more than an incidental effect upon the ERISA plan or upon relations among the principal ERISA entities.

Specifically, the court noted that a determination of the merits of plaintiffs' claims required a close analysis of the details of the operation and funding of the plan, and of the propriety of Mobil's communications to plaintiffs concerning the terms of the plan. Therefore, the claims had "a more than incidental effect upon the manner in which the ERISA plan is administered in terms of disclosure requirements which could potentially interfere with the maintenance of a uniform body of federal regulation." *Houdek v. Mobil Oil Corp., supra,* 879 P.2d at 423. As the court noted, the complaint made numerous references to the ERISA regulations and contained numerous allegations regarding administration of the ERISA plan.

Moreover, the defendant in *Houdek* was both the employer and a plan fiduciary. The court concluded that determinations regarding defendant's administration of the plan would affect the relations among plaintiffs, defendant, and the retirement plan as the principal ERISA entities involved.

Here, in contrast, a determination of the merits of plaintiff's claims does not require an analysis of the terms of the Plan or of whether the Plan was properly administered. Further, here, neither the plan administrator nor the employer is a party, and their responsibilities with respect to the Plan are not affected by plaintiff's claims. Thus, plaintiff's claims, unlike those of the *Houdek* plaintiffs, do not relate to the structure, administration, or type of benefits provided by the Plan. The claims are therefore not preempted.

## II.

Hall and Prudential contend that, even if plaintiff's claims are not preempted by ERISA, summary judgment is nevertheless appropriate for three reasons which were raised, but not ruled upon, in the trial court.

First, they argue that they were merely acting as "custodian or passive trustee" of plaintiff's IRA and that their only duty to plaintiff was to "hold title" to the IRA for her benefit. Second, relying on a "Custodial Account Agreement" they allegedly had with plaintiff concerning her IRA, Hall and Pru-

dential maintain that plaintiff's claims are barred because the contract narrowly limited the duties they owed to plaintiff and required plaintiff to "accept[ ] full responsibility for making and retaining investments in [the] IRA." Finally, they assert that the economic loss doctrine bars plaintiff's tort claims because the conduct at issue is governed by the terms of the Custodial Account Agreement.

Because each of defendants' contentions would require us to resolve disputed issues of material fact, summary disposition of plaintiff's claims based on these contentions would be inappropriate.

The judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion.

STERNBERG, C.J., and DAVIDSON, J., concur.