**INDUSTRIAL TECHNICAL
SERVICES, Plaintiff,**

v.

**PHOENIX HOME LIFE MUTUAL
INSURANCE COMPANY,
Defendant.**

**Civ. A. No. 93–30038–MAP.**

United States District Court,
D. Massachusetts.

Oct. 26, 1994.

Dennis P. Powers, Katz, Argenio & Powers, Springfield, MA, for plaintiff.

Francis D. Dibble, Jr., Bulkley, Richardson & Gelinas, Springfield, MA, for defendant.

### MEMORANDUM REGARDING DEFENDANT PHOENIX'S MOTION FOR SUMMARY JUDGMENT

(Docket No. 13)

PONSOR, District Judge.

### I. INTRODUCTION

Plaintiff Industrial Technical Services ("ITS") has filed a two-count complaint alleging that defendant Phoenix Home Mutual Insurance Company ("Phoenix") committed a breach of contract and violated Mass.Gen.L. ch. 93A by selling it an insurance policy that failed, as allegedly promised, to "match" the terms of a competitor's proposal. Plaintiff seeks $110,628 in damages suffered as a result of defendant's failure to provide the policy it contracted for.

Defendant has moved for summary judgment claiming that plaintiff's claims are preempted by ERISA. Alternatively, ITS has argued that summary judgment is appropriate on the ch. 93A claim, because it was filed beyond the four-year statute of limitations.

For the reasons set forth below, the court will deny the portion of the motion based on ERISA preemption and will allow the motion with regard to the Ch. 93A count.

### II. FACTS

The court will view the facts, as it must in ruling on a motion for summary judgment, in the light most favorable to the non-moving party, here ITS.

On December 22, 1987, ITS President Francis Neylon purchased insurance policies on some of its key employees from Phoenix. Neylon alleges that during his negotiations with agents of Phoenix prior to these purchases, he presented them with a copy of a proposal he had received from a competing

insurance broker. This plan had a number of favorable provisions not then contained in the ITS plans under discussion.

According to ITS, after reviewing the competitor's proposal, Phoenix agreed to "match" it—i.e., to provide substantially identical benefits in its own policies. Based on this promise, ITS then entered into the life insurance contracts with the defendant.

Approximately two months later, realizing that the Phoenix policies did *not*, in fact, match the competitor's proposal, ITS canceled the policies. ITS then filed this action in state court alleging breach of contract (Count I) and violations of ch. 93A (Count II). As noted, ITS seeks damages in the amount of $110,628, an amount that it claims constitutes the damages it has suffered as a result of defendant's failure to keep its promise.

## III. DISCUSSION

Plaintiff has offered two arguments in opposition to the portion of defendant's motion alleging ERISA preemption: first, that the policies purchased do not constitute a "plan" for purposes of the ERISA statute; and, second, that even if a "plan" of some sort was formed, ITS' state law claims are not preempted, because they do not "relate to" this plan. Plaintiff offers no opposition to defendant's statute of limitations argument on the ch. 93A claim.

### A. Was There A "Plan"?

The court will assume, for purposes of this decision, that the purchases of these life insurance policies created a "plan" under ERISA.

The courts have generously construed the acts and agreements that may comprise a plan. In *Wickman v. Northwestern National Ins. Co.*, 908 F.2d 1077 (1st Cir.1990), the First Circuit addressed the issue of whether an employer established or maintained a "plan" for purposes of the ERISA statute. The court reasoned that a plan is established

> . . . if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries,

the source of financing, and procedures for receiving benefits.

*Id.*, at 1082, citing *Donovan v. Dillingham*, 688 F.2d 1367, 1370 (11th Cir.1982) (*en banc*).

The salient factor to be considered in determining whether a "plan" exists is "whether the purchase of the insurance policy constituted an express intention by the employer to provide benefits on a regular and long term basis." *Id.*, at 1083.

Here, as in *Wickman*, the purchase of the insurance policies for the ITS employees was more than an isolated and aberrational incident. The record reveals that between 1987 and 1988 ITS purchased a total of six policies for six management level employees, with the intent that half the death benefits would be paid to the employees' estates. Significantly, it is also undisputed that on October 24, 1989 ITS notified the Department of Labor of its agreement with Phoenix regarding this deferred compensation plan for the six key employees.

These facts are probably sufficient to eliminate any dispute of fact as to whether the purchase of the policies constituted a "plan" for ERISA purposes. The question need not be lingered over, however, because (as will be seen below) plaintiff's state law claims simply do not, as a matter of law, "relate to" the plan, and are thus not preempted by ERISA.

### B. Do Plaintiff's State Law Claims "Relate To" the Plan?

In *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), the Supreme Court discussed the "statutory complexity" of ERISA's preemption provisions, which, in its words, "perhaps are not a model of legislative drafting." The language of 29 U.S.C. § 1144(a) contains the semantic gremlin, the phrase commanding that state laws that "relate to" an employee benefit plan shall be preempted. The interpretive struggles engendered by this phrase demonstrate once again that the words "relate to" should be exiled from the terminology of the law and returned to their original source, presumably somewhere in southern California.

Despite the difficulties, a few things may be said with certainty. First, state laws directly inconsistent with the provisions of ERISA are obviously without force. *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 142, 111 S.Ct. 478, 484, 112 L.Ed.2d 474 (1990); *Vartanian v. Monsanto,* 14 F.3d 697, 700 (1st Cir.1994). Second, state laws that are not facially inconsistent, but which affect the interpretation and administration of benefits, may also be preempted. *Mackey v. Lanier Collections Agency and Services, Inc.,* 486 U.S. 825, 829, 108 S.Ct. 2182, 2185, 100 L.Ed.2d 836 (1988). Third, it is generally the *impact* of the statute or common law cause of action, rather than its facial language or design, that determines whether it will be preempted. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 98, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983).

The bugaboo, as noted, is the language itself. In some cosmic sense, just about everything might be said to "relate to" everything else. But ERISA preemption ends somewhere; the question is where.

One of the best clues is the intent of Congress behind preemption, to the extent that can be discerned. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. at 45, 107 S.Ct. at 1551. The core justification for preemption is the assurance of uniformity in the administration of benefit plans, in the provision of benefits and in reporting requirements. *O'Toole v. Arlington Trust Co.,* 681 F.2d 94, 97 (1st Cir.1982). The central concern is the preservation of the "administrative integrity" of the plan, particularly "uniformity with respect to regulation of activities" surrounding the plan. *Fort Halifax Packing Company v. Coyne,* 482 U.S. 1, 15, 107 S.Ct. 2211, 2219, 96 L.Ed.2d 1 (1987).

Despite some confusion, it is clear, as a general proposition, that ERISA preemption is not to be applied crudely. It should not disrupt state statutory or common law claims that may "relate to" a plan only in the broadest or loosest sense of that term. The powers of the individual states, whether expressed in statute or common law, are not to be preempted unless the Congressional intent to do so is clear. *Framingham Union Hospital, Inc. v. Travelers Insurance Company,* 721 F.Supp. 1478, 1490 (D.Mass.1989). As the First Circuit has emphasized, "... preemption of state law is generally disfavored." *McCoy v. Massachusetts Institute of Technology,* 950 F.2d 13, 16 (1st Cir.1991).

Taking up the specific question under consideration in this case, other circuits have held that claims of misrepresentation with regard to the terms of an employee benefit plan are not preempted by ERISA. *Martin v. Continental Investors,* 934 F.2d 1265 (11th Cir.1991); *Perry v. P*I*E* Nationwide, Inc.,* 872 F.2d 157 (6th Cir.1989).

*Cuoco v. Nynex, Inc.,* 722 F.Supp. 884 (D.Mass.1989), presents a fact situation similar to that alleged here by plaintiff. In *Cuoco* the plaintiff charged the defendant with a series of misrepresentations regarding her benefit coverage. Judge Skinner held that

> ... plaintiff's claims arise not from the deprivation of any rights under the NYNEX plan but from the series of promises and misrepresentations which were allegedly made to her by defendants in 1987. She was lured into a false sense of security as to her health insurance ....

*Id.* at 884, 886.

In this case plaintiff also claims to have been lured into a false sense of security about the contents of its benefit package. ITS' claims do not create any risk to the administration of the plan *per se* or to the calculation of the benefits as the plan exists. The claim is simply that the plaintiff got snookered at the initial sale. The plan itself was not what defendant represented it to be. This kind of claim is not preempted.

As Judge Skinner stated in the *Framingham Union* case, causes of action based on misrepresentations made in connection with issuance of the insurance policies do not purport "to impact the administration of the Plan, provision of benefits or any like concern of ERISA." 721 F.Supp. at 1490. As such, there is no justification for preemption. *See also Pace v. Signal Technology Corporation,* 417 Mass. 154, 628 N.E.2d 20 (1994).

*Consolidated Beef Industries v. New York Life Ins. Co.,* 949 F.2d 960, 964 (8th Cir. 1991), does not assist defendant. Plaintiff's

claims in that case centered on activities at the heart of the administration of the benefit plan: errors in billing, interest rates and annual statements. Plaintiff's claim here does not require the court to probe the internal workings of defendant's plan, merely to compare its components, viewed externally, with the competitor's offering. To repeat, in these circumstances there is no preemption.

C. *The Claim Under Mass.Gen.L. ch. 93A.*

Claims under 93A are subject to a four-year statute of limitations. Mass.Gen.L. ch. 260 § 5A. In this case the alleged misrepresentations were made in December 1987; this suit was filed on January 14, 1993, over five years later. The 93A claim is therefore time barred.

## IV. CONCLUSION

For the foregoing reasons the motion for summary judgment as to Count I hereby DENIED; as to Count II the motion is ALLOWED.