METROPOLITAN LIFE INSURANCE
COMPANY, Plaintiff,

v.

Nancy SOCIA, Defendant.

Civil Action No. 97–11721–WGY.

United States District Court,
D. Massachusetts.

July 10, 1998.

James A. Cutelis, Lowell, MA, James J. Ciapciak, Duggan, Caccavaro & Ciapciak, Norwood, MA, for Defendants.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

The Plaintiff, Metropolitan Life Insurance Company ("MetLife"), is the underwriter for the Raytheon Long Term Disability Plan (the "Plan"), an employee benefit plan governed by ERISA, 29 U.S.C. §§ 1001–1461. The Defendant, Nancy Socia, was a Plan participant and beneficiary, and began receiving long-term disability benefits effective in November, 1992. MetLife alleges that Socia collected $17,735.31 worth of excess benefits, contrary to the terms of the Plan, and brings this suit under 29 U.S.C. § 1132(a)(3) to enforce the terms of the Plan and to collect the remaining amount of the overpayment, some $14,742.66. Socia denies liability for the alleged overpayments, and counterclaims for retroactive reinstatement of benefits totaling $18,890.04 which she maintains were terminated wrongfully in November 1994. She also requests prospective reinstatement of her benefit payments effective November 1997. The parties filed cross motions for summary judgment.

This case raises interesting questions regarding the scope of relief available to ERISA fiduciaries against beneficiaries— questions that have been resolved in conflicting ways among the circuits and present issues of first impression in this circuit. This Court concludes that MetLife may recover some part of its overpayments, but that as to the better part of the sum ERISA simply does not afford a remedy.

## BACKGROUND

Nancy Socia was employed as a wire assembler at Raytheon until July 6, 1992, about which time she was diagnosed with fatty liver, gallstones with colic, and depression, and tested positive for HIV. Socia filed for disability benefits under the Plan, her claim was approved, and she began to receive biweekly benefits in the amount of $744.80 effective November 1992.

James M. Campbell, Campbell, Campbell & Edwards, Boston, MA, for Plaintiffs.

## A. The Plan Overpayments

Under the terms of the Plan, benefits are to be reduced by the amount of any other disability benefits received by the beneficiary, including any Social Security disability insurance benefits for which the beneficiary may be eligible. The Plan provides that if benefits are paid that are found later to have been excessive, the Plan has a right to a refund from the beneficiary. Specifically, the Plan states:

> You must give us prompt notice and also submit appropriate written prior notice to us if [sic]:
>
> (a) an award; or
>
> (b) a settlement; or
>
> (c) a compromise; or
>
> (d) any other determination;
>
> which results or will result in payment or entitlement to any amounts which are derived from a source listed in the Table in part (2).
>
> When we receive any such notice and proof or otherwise learn of such award, settlement, compromise or determination, we will compute:
>
> (a) the amount of your future Bi–Weekly Benefits in accordance with the provisions of this subsection A; and
>
> (b) the amount of Adjusted Bi–Weekly Benefits, if any, for any period for which Bi–Weekly Benefits have already been paid or credited to you before the date that we receive such notice and proof or otherwise learn of such award, settlement, compromise or determination.

.     .     .     .     .

> If we pay Long Term Disability Benefits to you, and it is found that we paid more Long Term Disability Benefits to you than we should have paid, we will have the right to a refund from you. The amount of the refund is the difference between:
>
> (a) the amount of Long Term Disability Benefits paid by us; and
>
> (b) the amound of Long Term Disability Benefits which should have been paid by us.

Reytheon Employees Disability Trust Bi–Weekly Benefits Plan, 6–7, 10.

MetLife notified Socia in April of 1993 that she should apply for Social Security benefits, and that any retroactive award could result in an overpayment of Plan benefits, which would have to be refunded to the Plan. In December 1993, MetLife notified Socia that it had not received any confirmation of her application or eligibility for Social Security benefits. MetLife warned that it would estimate the amount of benefits to which she was entitled, and reduce her Plan benefit payments by the estimated amount if she did not respond or apply for Social Security benefits. When Socia did not respond, MetLife began in March 1994 to reduce her monthly benefits by $726.00. In June, MetLife learned that Socia had been awarded Social Security benefits, including a retroactive lump sum payment, and revised its adjustment to reflect a $726.00 monthly reduction for Primary benefits and a $363.00 monthly reduction for Family benefits, both effective February 1993. As a result, MetLife calculated that Socia was entitled to a bi-weekly payment of $242.18, and that she was obligated to refund $17,735.31 to the Plan. By applying Socia's remaining bi-weekly benefits to the outstanding amount of the overpayment, MetLife reduced the amount of the debt to $14,724.66 before terminating benefits in November 1994.

## B. The Termination of Benefits

Following the award of benefits effective November 1992, MetLife solicited and received a number of statements from physicians evaluating Socia's functional capacity. Although at least one doctor found Socia "totally disabled" within the meaning of the Plan, at least one other doctor subsequently disagreed, concluding that she could resume work anytime. Based on that evaluation, MetLife informed Socia in September that it no longer considered her eligible for benefits and would terminate her claim effective October 1, 1993.

Socia asked for a review of this decision. Throughout October, November, and December 1993, Socia submitted physicians' evaluations in response to repeated requests by MetLife. On October 11, 1993 the company informed Socia that her benefits were rein-

stated, but then on November 11, 1993 without explanation informed Socia that it had insufficient medical data on file. A subsequent examination performed in February 1994 again concluded that Socia was not disabled and that she could return to work. MetLife then requested additional supplementation in two identical letters dated March 30 and May 19, 1994. Receiving no response, MetLife again threatened termination of benefits in an August 1994 letter, and terminated benefits in September.

Socia again sought review. In response to further medical documentation, MetLife reinstated benefits in November 1994, but requested additional information. Finally in a January 1995 letter, MetLife informed Socia that benefits were terminated as of November 1994. Socia apparently has not responded to that action, nor has she sought further review of her claim.

## ANALYSIS

Summary judgment is appropriate if the moving party makes a showing on the basis of the pleadings and other materials that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as matter of law. Fed.R.Civ.P. 56(c). The burden is on the non-moving party "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The cross motions for summary judgment present two issues. First, were Socia's benefits wrongfully terminated? Second, can MetLife maintain an action to recover the alleged overpayments? The first issue is the simpler.

### A. Standard for Reviewing the Decision of MetLife

"A denial of benefits challenged under section 1132(a)(1)(b) is reviewed under a *de novo*

standard unless the benefit plan under which benefits are claimed gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). If the plan does afford discretionary authority, the standard of review is whether the ERISA out-of-court decision maker's denial of benefits was "arbitrary and capricious" *See id.; Recupero v. New England Tel. & Tel. Co.,* 118 F.3d 820, 827 (1st Cir.1997).

■ In this case, MetLife is vested with discretionary authority to deny benefits.[1] The plan provides that it may ask for proof of disability "as often as we reasonably choose," and that "all proof must be satisfactory to us." *See* Raytheon Employees Disability Trust Bi–Weekly Benefits Plan p. 7, Tab B of MetLife's Motion for Summ. Judgment (hereinafter "Plan Provisions"). The terms "we" and "us" refer to MetLife. *Id.* at 9. Similar language has been held by a court in this District interpreting another of MetLife's policies to discretionary authority directly in MetLife. *See Guarino,* 915 F.Supp. at 444. This Court therefore reviews MetLife's eligibility determination according to an arbitrary and capricious standard.

### B. Termination of Benefits

■ Socia's argument that MetLife's determination was arbitrary and capricious is based on the contention that MetLife demanded too frequent submissions of medical evidence and eventually simply exhausted Socia's will to pursue her claim. This argument overlooks the fact that the evidence submitted by Socia was internally contradictory. The initial physician's evaluation pronounced her disabled, but subsequent examinations found little or no limitation in her ability to return to work. Even if repeated and frequent requests for documentation

---

1. It is not enough that the plan vest authority in the "administrator" because the administrator is actually the Raytheon Employees Disability Trust. MetLife, contrary to its representations in briefs, is only the underwriter, who also makes benefits determinations. Unless the Plan specifically vests discretion in MetLife, review is de novo. *See Rodriguez–Abreu v. Chase Manhattan Bank,* 986 F.2d 580 (1st Cir.1993); *Guarino v. Metropolitan Life Ins., Co.,* 915 F.Supp. 435, 443–44 (D.Mass.1995) (Woodlock, J.).

could be considered unreasonable or abusive under other circumstances, a point with the Court does not address, this was not a case— as Socia contends—of redundant and unnecessary production of the same medical evidence.

Moreover, in November 1994, Socia was required to substantiate a significantly higher level of disability under the Plan than she had to that point. The Plan provides that during the first 24 months of benefits, the medical evidence must demonstrate that the beneficiary is "fully disabled," meaning unable to perform her job. Thereafter, the beneficiary must be "totally disabled," meaning unable to perform her job or any other job. Beginning in November 1994, Socia therefore had to show that she was unable to perform not only her own job at Raytheon, but any job. Even if the evidence she had submitted up until that time was satisfactory, it could not be arbitrary for MetLife to require additional documentation when the Plan itself required an additional showing.

Socia also argues that her eligibility for Social Security disability benefits should have been conclusive proof of her disability under the Plan, because the Plan presumed that she was eligible for Social Security benefits. The argument is without merit. There is no language in the Plan that suggests that a Social Security award has any bearing on eligibility under the Plan, or that MetLife must take into account any criteria other than those identified in the plan.

Finally, Socia never requested a review of the final determination to terminate benefits. Such a review is provided under the terms of the plan, and Socia herself successfully made use of this procedure prior to final termination. The First Circuit has explicitly imposed an exhaustion requirement in cases such as these, unless resort to the review procedure provided would be demonstrably futile or the remedy inadequate. *See Drinkwater v. Metropolitan Life Ins. Co.*, 846 F.2d 821, 826 (1st Cir.1988). Socia has made no

showing of futility or inadequacy; her counterclaim in this forum must therefore fail.

### C. Action to Recover Overpayments.

■ It is well established that state law actions to enforce the contractual terms of an ERISA Plan are preempted by the federal statutory scheme. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 53–56, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 62–63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Andrews–Clarke v. Travelers Ins. Co.,* 984 F.Supp. 49, 53–58 (D.Mass.1997). In order to maintain this suit, therefore, MetLife must ground its claim on some provision of ERISA.[2] ERISA now provides nine civil enforcement provisions; each specifically identifies who may bring suit and what relief is available. *See* 29 U.S.C. §§ 1132(a)(1)-(9). These provisions constitute an "interlocking, interrelated, and interdependent remedial scheme, which is in turn part of a 'comprehensive and reticulated statute.' " *Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 146, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985)(quoting *Nachman Corp. v. Pension Benefit Guaranty Corp.,* 446 U.S. 359, 361, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980) ). As a result, both the Supreme Court and the First Circuit have admonished courts not to create other remedies beyond those Congress has seen fit to enact. *Russell,* 473 U.S. at 146, 105 S.Ct. 3085; *Turner v. Fallon Community Health Plan, Inc.,* 127 F.3d 196, 199 (1st Cir.1997); *Reich v. Rowe,* 20 F.3d 25, 31–33 (1st Cir. 1994); *Drinkwater v. Metropolitan Life Ins. Co.,* 846 F.2d 821, 824 (1st Cir.1988).

#### 1. Federal Common Law

■ It is surprising, in light of the established law of this Circuit, that MetLife choses to characterize this action as one seeking a federal common law remedy. Relying on *Provident Life & Accident Ins. Co. v. Waller,* 906 F.2d 985, 993 (4th Cir.1990), MetLife urges this Court to create such a remedy in the absence of an explicit provision in order

---

**2.** MetLife's right to recoupment of the retroactive Social Security award by means of a reduction in Socia's benefits is undisputed under the Plan language. *See Stuart v. Metropolitan Life Ins. Co.,* 664 F.Supp. 619, 622–24 (D.Me), *aff'd per*

*curiam,* 849 F.2d 1534 (1st Cir.1998). Once Socia's benefits were terminated, however, this means of recoupment was foreclosed as a practical matter, and MetLife is now forced to rely on the remedial structure of ERISA itself.

to prevent manifest injustice. In *Waller,* an ERISA plan administrator sought to recover over-payments to a plan participant. The Court held that it was authorized to "develop a federal common law of rights and obligations under ERISA regulated plans," *Id.* at 990 (quoting *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 110, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) ), and proceeded to create a remedy for unjust enrichment.[3]

Only one other Circuit has embraced the rule of *Waller. See Luby v. Teamsters Health, Welfare & Pension Trust Funds,* 944 F.2d 1176, 1185–87 (3rd Cir.1991). Moreover, the holding has been widely criticized. In *Health Cost Controls v. Skinner,* 44 F.3d 535 (7th Cir.1995), the Seventh Circuit observed that the implied remedy recognized in Waller "is directly at odds with the teaching of *Massachusetts Life Insurance Co. v. Russell." Id.* at 537 n. 4. Similarly, in *Pacificare Inc. v. Martin,* 34 F.3d 834 (9th Cir.1994), the Ninth Circuit rejected *Waller* outright, holding that a claim must invoke one of the specific remedies listed in § 1132 in order to state a cause of action under ERISA. *Id.* at 836.

It is important to recognize that the development of a "federal common law of rights and obligations", as authorized by *Pilot Life,* 481 U.S. at 56, 107 S.Ct. 1549, is distinct from the development of federal common law remedies outside the provisions of § 1132. As a result, authorization for the first is entirely consistent with prohibition of the second. The First Circuit has recognized that "federal courts have regularly inferred or created remedies in the shadow of federal statutes, although the practice has waned somewhat in recent years." *Turner,* 127 F.3d at 199. The court has nevertheless

maintained that "ERISA's express remedies are a signal to courts not to create additional remedies of their own." *Id.* (citing *Russell,* 473 U.S. at 145–48, 105 S.Ct. 3085). This Court is bound to follow that signal. It is therefore apparent that MetLife cannot pursue a federal common law remedy of unjust enrichment to recover overpayments under the Plan.

### 2. Statutory Remedy: "Other Equitable Relief"

The demise of its theory of implied remedies does not mean that this is the end of the road for MetLife. As Justice Brennan recognized in his concurring opinion in *Russell,* the remedial section of ERISA, 29 U.S.C § 1132(a)(3),[4] explicitly provides for "other appropriate equitable relief." *See Russell,* 473 U.S. at 155, 105 S.Ct. 3085 (Brennan, J., concurring). "Thus while it may well be that courts generally may not find implied private remedies in ERISA, the Court's remarks have little bearing on how courts are to go about construing the private remedy that Congress explicitly provided . . . ." *Id.* In other words, although there are no implied remedies available, MetLife may find the remedy it seeks embedded in the statute itself.[5]

█ The distinction is not merely semantic. Section 1132(a)(3) authorizes only "equitable" relief. The Supreme Court in *Mertens v. Hewitt Associates,* 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), defined the scope of equitable relief available under § 1132(a)(3) as "those categories of relief that were typically available in equity (such as injunction, mandamus, and restitution, but

---

**3.** The court in *Waller* expressly disclaimed reliance on any provision in ERISA, resting its decision instead on the general power to create federal common law in the ERISA context. 906 F.2d at 988 n. 6.

**4.** A civil action may be brought:
(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

29 U.S.C. § 1132(a)(3).

**5.** MetLife bases its argument in the papers before the Court exclusively on its theory of implied remedies. Nevertheless, the Complaint identifies as the basis for the suit "29 U.S.C. § 1132(a)(3)(B)(ii)". Because the remedies available under the statute appear to afford some measure of recovery, the Court is constrained, in the context of Socia's Motion for Summary Judgment, to consider the merits of this argument even though it was not pressed in the briefs.

not compensatory damages)." *Id.* at 255, 113 S.Ct. 2063. Thus *Mertens* imposes a distinction between relief that is typically legal, such as money damages, and that which is typically equitable, such as injunction. The essential question in this case is whether the relief sought—a refund of the amount of money to which Socia was not entitled as a result of her Social Security benefits—falls within the meaning of "other appropriate equitable relief" available under the statute.

A number of circuits confronted with analogous circumstances have answered in the affirmative. *See Heller v. Fortis Benefits Ins. Co.,* 142 F.3d 487, 495 (D.C.Cir.1998) (establishing equitable cause of action under theory of restitution); *Harris Trust & Sav. Bank v. Provident Life & Accident Ins. Co.,* 57 F.3d 608, 615–16 (7th Cir.1995) (same); *see also Blue Cross & Blue Shield of Alabama v. Sanders,* 138 F.3d 1347, 1353–54 (11th Cir.1998) (accepting for the purpose of establishing jurisdiction that claim under theory of specific performance is plausibly equitable, without deciding whether it stated a claim for which relief could be granted). *But see FMC Med. Plan v. Owens,* 122 F.3d 1258, 1261 (9th Cir.1997)(recognizing that restitution is an equitable remedy but declining to apply it under the circumstances of the case). Thus it appears that MetLife may seek equitable relief in the form of a restitutionary remedy under § 1132(a)(3).

### 3. Restitution as an Equitable Remedy

■ Whether MetLife is entitled to judgment is another matter. Many courts have held that in order to recover in restitution, the plaintiff must show that (1) it had a reasonable expectation of payment, (2) the defendant should reasonably have expected to pay, or (3) society's reasonable expectations of person and property would be defeated by nonpayment. *See, e.g., Heller,* 142 F.3d at 495; *Harris Trust,* 57 F.3d at 615; *Waller,* 906 F.2d at 993–94; *see also* C. Kaufman, Corbin on contracts § 19A, at 50 (Supp. 1989). Furthermore restitution, in the limited sense relevant here, is characterized in *Mertens* as the return of "ill-gotten plan assets or profits," *Mertens,* 508 U.S. at 260,

113 S.Ct. 2063, and not merely the payment of contractual obligations.

The Ninth Circuit in *Owens* held that an action by a health care insurer to recover overpayments under an ERISA plan could not recover in restitution because the defendant had not obtained the funds through fraud or wrongdoing. *Owens,* 122 F.3d at 1261. Rather, the insurer had paid the defendant's medical bills arising from an automobile accident—benefits under the plan to which the defendant was entitled. Later, when the defendant received a third party recovery, he refused to reimburse the insurer. *Id.* at 1259–60. Although the terms of the plan expressly obligated him to make such reimbursement, and even though he had signed a mandatory agreement to do so, the court reasoned that the benefits were rightfully received under the plan, and that the claim for refund arose out of a subsequent contractual duty that could not be enforced under remedial structure of § 1132(a)(3). *Id.; see also Health Cost Controls v. Wardlow,* 825 F.Supp. 152, 157–58 (W.D.Ky.1993). *But see Heller,* 142 F.3d at 495; *Harris Trust,* 57 F.3d at 615–16.

■ This Court considers the Ninth Circuit's reasoning in *Owens* to be more persuasive than that of other cases allowing relief under analogous circumstances. The fact that a remedy may be characterized as restitution does not, standing alone, render it equitable. Restitution straddles the line between law and equity. Chief Judge Posner has explained that "restitution is a legal remedy when ordered in a case at law and an equitable remedy ... when ordered in an equity case." *See Reich v. Continental Cas. Co.,* 33 F.3d 754, 756 (7th Cir.1994). An equity case is one in which "the basis for [the] claim [is] a duty founded on equitable rather than legal principles." *Id.*

Stated another way, equitable restitution must mean something other than merely an alternative measure of damages in a legal action for breach of contract. As the Supreme Court noted in *Mertens,* "We agree ... that the distinction between 'equitable' and 'remedial' relief is artless, but do not agree that we are therefore free to consider it meaningless." *Mertens,* 508 U.S. at 259 n.

8, 113 S.Ct. 2063. To allow restitution based on principles of contract would obscure any distinction that Congress sought to impose between typically equitable remedies and typically legal remedies, such as money damages. *See Mertens*, 508 U.S. at 255, 113 S.Ct. 2063 ("Money damages are, of course, the classic form of legal relief.").

### 4. MetLife's Remedy

■ MetLife must therefore pursue a claim for restitution on an equitable basis distinct from Socia's contractual obligation to pay money. The court in *Owens* rejected the insurer's theory of unjust enrichment because the defendant had engaged in no wrongdoing other than the breach of the contract, which would not afford an equitable remedy. In this case, however, there is evidence that Socia concealed the fact of her Social Security award from MetLife for a period of time, during which she continued to receive the full amount of her benefits under the Plan. The case is thus distinguishable from *Owens*. Failure to notify MetLife of the award would give rise to an equitable action for restitution, since benefits would have been paid under a mistake of fact induced by misrepresentation or concealment. *See* Restatement of Restitution § 18. Although MetLife may not recover the full amount of its damages under the contract, this narrower theory of relief remains available.

MetLife is entitled to restitution for the bi-weekly Long Term Disability benefits it paid to Socia while laboring under its induced mistake of fact. This period extends from the date her Social Security benefits were awarded until the company began to reduce Socia's benefits to offset the award. MetLife may recover only the payments it made during this period, and is not entitled to recover the amount of the retroactive Social Security award. MetLife's restitutionary remedy cannot reach beyond the time when the concealment or misrepresentation began, in its efforts to recover benefits rightfully paid under the terms of the Plan. Of course, MetLife is entitled to all of the recoupment it has already taken out of Socia's benefits pursuant to the Plan, and no offset of the restitutionary remedy is appropriate.

■ Having articulated the measure of relief available, the Court confronts an unfortunate obstacle to the resolution of this dispute. The record MetLife has furnished this Court contains substantial and material gaps and internally contradictory statements which preclude summary disposition. Specifically, nowhere does it appear exactly when the award of Social Security benefits was made. This date is the critical point from which MetLife's recovery is to be measured. In addition, although a June 24, 1994 letter from MetLife to Socia reflects constant bi-weekly payments of $744.80 throughout the period from January 1, 1993 to June 9, 1994, two earlier letters dated February 11, 1994 and March 30, 1994 indicate that the benefit payments were reduced at some point in March 1994 to reflect an estimated Social Security award. If the benefits were indeed reduced, MetLife has no equitable claim to recover sums it actually withheld under the terms of the Plan. MetLife is entitled to recover all sums actually paid during the stated period, but until the company establishes a record of that period and those sums, this Court cannot grant the motion for summary judgment.

## CONCLUSION

When this Court last had occasion to apply ERISA's precise and restrictive remedial apparatus, it was to deny relief to the family of a deceased whose requests for medical benefits under the terms of an ERISA governed plan were allegedly wrongfully denied. *See Andrews–Clarke*, 984 F.Supp. at 50–56. The evisceration of legally recognized and protected rights is no less apparent in this case. There were valid and contractually binding obligations created between MetLife and Socia, and those have been breached. "Under traditional notions of justice, the harms alleged—if true—should entitle [the plaintiff] to some legal remedy." *Id.* at 52. ERISA, however, does not always vindicate traditional notions of justice, either for the plan or for its participants. MetLife here must content itself with proving a restitutionary claim for substantially less than the Plan provides.

Both motions for Summary Judgment are DENIED.

SO ORDERED.