## Hitachi High Technologies America, Inc. *vs.* Kevin Bowler.

Bristol. September 10, 2009. - November 4, 2009.

Present: Marshall, C.J., Ireland, Spina, Cowin, Cordy, Botsford, & Gants, JJ.

*Constitutional Law,* Federal preemption. *Employee Retirement Income Security Act. Jurisdiction,* Federal preemption. *Unjust Enrichment.*

In a civil action alleging unjust enrichment, brought in Superior Court by a retirement plan fiduciary to recover money mistakenly paid to the defendant, a plan beneficiary, the judge did not err in granting the defendant's motion to dismiss on the ground that the court lacked subject matter jurisdiction over the claim, where the claim "related to" an employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. (2006) (ERISA), and was therefore preempted, given that allowing such a claim in State court would present the threat of inconsistent regulation relating to the administration of retirement plans and would constitute a prohibited "alternative enforcement mechanism" to ERISA's enforcement regime. [263-271]

Civil action commenced in the Superior Court Department on January 4, 2005.

A motion to dismiss was heard by *Richard T. Moses,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Brett D. Carroll* for the plaintiff.

*Gregory D. Lorincz (Paul F. Lorincz* with him) for the defendant.

Marshall, C.J. We are asked to determine whether the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 et seq. (2006), preempts this State law action brought by a retirement plan fiduciary to recover money mistakenly paid to a plan beneficiary. The plaintiff, Hitachi High Technologies America, Inc. (Hitachi), filed an action for unjust enrichment in the Superior Court against its former employee, the defendant Kevin Bowler, for his alleged failure to reimburse $29,315.75 in

retirement benefits that Hitachi had overpaid to Bowler due to an accounting error. Bowler moved to dismiss Hitachi's action on the ground that the State court lacked subject matter jurisdiction over the claim. The motion was allowed, and Hitachi appealed. We transferred the case here on our own motion. We conclude that Hitachi's action is preempted by ERISA, and we now affirm.

1. *Background.* The relevant facts, which we summarize from the judge's memorandum of decision, are few and largely undisputed. Bowler was an employee of Hitachi for approximately twenty years. Some years after his employment ended, Bowler contacted Hitachi regarding his accrued retirement benefits. In a letter dated January 9, 2003, Hitachi advised Bowler that his benefits totaled $170,160.40, and that a lump-sum payment for that amount could be "rolled over" to an individual retirement account (IRA) of his choice. At Bowler's request, Hitachi disbursed the funds to an IRA account designated by Bowler.

Approximately four months later, Hitachi informed Bowler that his retirement benefits had been miscalculated and that the correct payment should have been $140,844.65, and asked Bowler to return $29,315.75 to Hitachi. Hitachi additionally informed Bowler that, as the plan fiduciary, it was obligated under ERISA to recover interest on the excess funds at the annual applicable statutory interest rate of 4.98 per cent.[1] Discussions among Hitachi, Bowler, and their representatives, in an attempt to reach a resolution, extended through 2004.[2] Bowler informed Hitachi that he was willing to return the overpaid sum provided that he would not suffer any financial consequences. For example, he offered to return the overpaid funds, with any interest placed in an escrow account to be used to offset any expenses incurred by Bowler arising from Hitachi's mistake.[3] Hitachi declined to make

---

[1]The parties have stipulated that the $170,160.40 payment to Bowler represented an overpayment in the amount of $29,315.75, and that the overpayment was due to a mathematical error made by Hitachi's actuaries.

[2]In communications with Bowler, Hitachi emphasized that it was "required by law" to ask Bowler to return the overpayment together with interest, explaining that "[t]he Employee Retirement Income Security Act requires us to safeguard the Plan's assets and protect the interests of *all* Plan Participants, which may include filing a lawsuit against you in federal court if you do not return the overpayment to the Plan."

[3]Bowler had particular concerns about the tax consequences to him of Hitachi's mistake, having been informed by his accountant that, because of the

Bowler whole from any liability that he might incur as a result of Hitachi's mistake.[4]

In January, 2005, Hitachi commenced this action against Bowler, alleging one count of unjust enrichment and seeking an order that Bowler repay the full amount of the overpayment, together with interest. Bowler filed a counterclaim seeking indemnification for all taxes, penalties, interest, professional fees (accounting and legal), and other damages he had incurred or would incur as a result of Hitachi's mistake. On the day of trial, Bowler moved to dismiss Hitachi's complaint for lack of subject matter jurisdiction, claiming that Hitachi's claim was preempted by ERISA's civil enforcement provisions and subject to the exclusive jurisdiction of the Federal courts.[5] The judge heard argument on Bowler's motion, took the motion under advisement, and then held a bench trial on the merits of Hitachi's claim. In his memorandum of decision and order for judgment, the judge allowed Bowler's motion to dismiss. He also concluded that, had there been jurisdiction, a remedy of unjust enrichment would not lie under State law.

2. *Discussion.* We review de novo the judge's determination that Hitachi's claim is preempted by ERISA. *Ritter* v. *Massachusetts Cas. Ins. Co.*, 439 Mass. 214, 215 (2003), and cases cited. We approach the issue against a well-established backdrop of the breadth of ERISA preemption of State law claims. See *Pilot Life Ins. Co.* v. *Dedeaux*, 481 U.S. 41, 45-46 (1987), quoting *Alessi* v. *Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981) ("express pre-emption provisions of ERISA are deliberately expansive and designed to 'establish pension plan regulation as exclusively a federal concern' "); *Chestnut-Adams Ltd. Partnership* v. *Bricklayers & Masons Trust Funds of Boston*, 415 Mass. 87, 91 (1993) ("Congress intended ERISA to preempt State regulation of employee benefit plans as broadly as possible"); *Andrews-Clarke* v. *Travelers Ins. Co.*, 984 F. Supp. 49, 57 n.31

---

overpayment, he had incurred an additional $10,559 in Federal income tax, $1,554 in Massachusetts income tax, and a six per cent yearly excise tax of $1,759.

[4]Counsel for Hitachi proposed that Bowler be indemnified for one year of any excise taxes that would become due, but not for any income tax liability or other expenses.

[5]Prior to trial, the parties had filed cross motions for summary judgment, which a different judge in the Superior Court had denied.

(D. Mass. 1997), quoting Nwogugu *vs.* KPMG Peat Marwick, No. 97-10282 (D. Mass. June 19, 1997) (comparing ERISA to "a 'Pac Man' that runs around the legal landscape, [somewhat indiscriminately] eating up other claims").

The ERISA preemption clause provides that, subject to exceptions not relevant here, the statute's provisions "*shall supersede* any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan" (emphases added). 29 U.S.C. § 1144(a).[6] The United States Supreme Court has said that a law " 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw* v. *Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983).[7] Nevertheless, "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Id.* at 100 n.21. To determine whether a State law action "relates to" an ERISA plan or is "too remote" from it, the Supreme Court has instructed that we "go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive."[8] *New York State Conference of Blue*

---

[6]"State law" is defined to include "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c) (2006).

[7]The United States Supreme Court explained that Congress had rejected less expansive preemption language directed at "state laws relating to the *specific subjects* covered by ERISA" (emphasis added), *Shaw* v. *Delta Air Lines, Inc.*, 463 U.S. 85, 98 (1983), and had instead chosen to supplant all State laws that "relate to" ERISA regulated plans. Accordingly, ERISA preempts a State law " 'even if the law is not specifically designed to affect such plans, or the effect is only indirect,' . . . and even if the law is 'consistent with ERISA's substantive requirements.' " *District of Columbia* v. *Greater Wash. Bd. of Trade*, 506 U.S. 125, 130 (1992), quoting *Ingersoll-Rand Co.* v. *McClendon*, 498 U.S. 133, 139 (1990), and *Metropolitan Life Ins. Co.* v. *Massachusetts*, 471 U.S. 724, 739 (1985).

[8]The "relates to" language of 29 U.S.C. § 1144(a) has been referred to as a "semantic gremlin" that "should be exiled from the terminology of the law." *Industrial Tech. Servs.* v. *Phoenix Home Life Mut. Ins. Co.*, 866 F. Supp. 48, 49 (D. Mass 1994). "If 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for '[r]eally, universally, relations stop nowhere.' " *New York State Conference of Blue Cross & Blue Shield Plans* v. *Travelers Ins. Co.*, 514 U.S. 645, 655 (1995), quoting H. James, Roderick Hudson xli (New York ed., World's Classics 1980).

*Cross & Blue Shield Plans* v. *Travelers Ins. Co.*, 514 U.S. 645, 656 (1995). Accordingly, to determine whether Hitachi's claim for unjust enrichment "relates to" its employee benefit plan and is thus preempted, we first examine Congress's intent. *Pace* v. *Signal Tech. Corp.*, 417 Mass. 154, 156 (1994). See *Allis-Chalmers Corp.* v. *Lueck*, 471 U.S. 202, 208 (1985) ("the question whether a certain state action is pre-empted by federal law is one of congressional intent"). We conclude that the claim falls comfortably within the zone of ERISA preemption.

The "basic thrust" of the preemption clause is to "avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans." *New York State Conference of Blue Cross & Blue Shield Plans* v. *Travelers Ins. Co.*, *supra* at 657. Employers make a commitment to pay certain employee benefits under a regulatory scheme that is as detailed as it is complex. *Fort Halifax Packing Co.* v. *Coyne*, 482 U.S. 1, 9 (1987). Congress recognized that the "most efficient way" for employers to meet their responsibilities is to "establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits." *Id.* A uniform system would be difficult to achieve if a benefit plan were subject to different requirements in each State. *Id.* An employer could be required, for example, "to keep certain records in some States but not in others; . . . to process claims in a certain way in some States but not others; or to comply with certain fiduciary standards in some States but not in others." *Id.*

At issue in this case is whether Hitachi, as the plan fiduciary, can or should demand interest from the beneficiary on the overpayment resulting from Hitachi's mistake; whether Hitachi can or should indemnify the beneficiary for some (or all) tax liability incurred because of the mistaken overpayment; and whether Hitachi can or should pay the costs of lawyers or accountants retained by the beneficiary because of the overpayment. If each State were to decide differently these issues of fiduciary rights and responsibilities, there would be a myriad of State laws resolving overpayment disputes. In short, allowing Hitachi's action would "present the threat of conflicting and inconsistent regulation that would frustrate uniform national administration of ERISA plans." *Danca* v. *Private Health Care Sys., Inc.*, 185 F.3d 1, 7

(1st Cir. 1999), citing *New York State Conference of Blue Cross & Blue Shield Plans* v. *Travelers Ins. Co., supra* at 656-658.

Hitachi argues that, because it is not necessary to interpret any particular provision of its retirement plan to adjudicate its claim, our resolution of its unjust enrichment action would not create inconsistent and confusing layers of regulation, and its claim is therefore not preempted.[9] Neither we nor other courts have viewed ERISA preemption so narrowly. Rather, we must examine the State cause of action to determine if it "directly affect[s] the administration of benefits under the plan" or impacts "whether any benefits are paid." *Pace* v. *Signal Tech. Corp., supra* at 159, quoting *Cuoco* v. *NYNEX, Inc.,* 722 F. Supp. 884, 887 (D. Mass. 1989). See *Industrial Tech. Servs.* v. *Phoenix Home Life Mut. Ins. Co.,* 866 F. Supp. 48, 50 (D. Mass. 1994). Not all claims concerning retirement plans directly affect the administration of a plan. We have concluded, for example, that a State law action for misrepresentation was not preempted where a beneficiary was falsely told that he was covered by a long-term disability plan. *Pace* v. *Signal Tech. Corp., supra* at 158-159. We noted in that case that claims of misrepresentation do not derive from the rights and obligations created in a benefit plan but from promises or fabrications to a beneficiary. *Id.* at 158, citing *Cuoco* v. *NYNEX, Inc., supra* at 886. Hitachi's action, in contrast, arises from the actual administration of the plan — for example, whether Hitachi is correct that Bowler *must* pay interest on the plan's mistaken overpayment. See note 2, *supra.* Cf. *Industrial Tech. Servs.* v. *Phoenix Home Life Mut. Ins. Co., supra* at 51 (activities "at the heart of the administration of the benefit plan" include "errors in billing").

There is a separate reason to conclude that Hitachi's claim is preempted.[10] In enacting ERISA, Congress clearly intended to provide a comprehensive remedial scheme that would serve as

---

[9]The judge in the Superior Court, citing to par. 3.3.2 of Hitachi's retirement plan, which references "mistaken contributions," reasoned that "state law actions to enforce contractual terms of ERISA plans are preempted by the federal statutory scheme." Paragraph 3.3.2, however, relates to *nondeductible* contributions made by the employer to the plan, not to distributions made by the plan to employees or beneficiaries. Hitachi correctly notes that it is not seeking to enforce par. 3.3.2 or any other provision of the plan.

[10]ERISA preempts, among others, two kinds of State laws that "relate to" ERISA plans: (1) "laws that present the threat of conflicting and inconsistent

the exclusive enforcement mechanism for ERISA disputes. *Pilot Life Ins. Co.* v. *Dedeaux*, 481 U.S. 41, 54 (1987). Detailed provisions in the statute "set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans." *Id.* at 54. These carefully integrated civil enforcement provisions "provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly" (emphasis in original). *Massachusetts Mut. Life Ins. Co.* v. *Russell*, 473 U.S. 134, 146 (1985). The remedial scheme would be "completely undermined" if parties to an ERISA plan were "free to obtain remedies under state law that Congress rejected in ERISA." *Pilot Life Ins. Co.* v. *Dedeaux, supra.* Thus, State laws are preempted by ERISA when they serve as "alternative enforcement mechanisms" to ERISA's enforcement regime. See *New York State Conference of Blue Cross & Blue Shield Plans* v. *Travelers Ins. Co., supra* at 658, citing *Ingersoll-Rand Co.* v. *McClendon*, 498 U.S. 133, 142 (1990); *Danca* v. *Private Health Care Sys., Inc., supra.* "[I]f a claim can be brought under ERISA, it must be brought under ERISA." *Ritter* v. *Massachusetts Cas. Ins. Co.*, 439 Mass. 214, 216 (2003).

Bowler argues that Hitachi's attempt to recover the funds it erroneously paid to Bowler could have been brought under ERISA's civil enforcement provisions, specifically 29 U.S.C. § 1132(a)(3)(B), and is therefore preempted as an "alternative enforcement mechanism."[11] That section authorizes civil actions by plan participants, beneficiaries, and fiduciaries "to obtain

regulation that would frustrate uniform national administration of ERISA plans," and (2) laws that amount to "alternative enforcement mechanisms" to those in ERISA's civil enforcement provisions. *Danca* v. *Private Health Care Sys., Inc.*, 185 F.3d 1, 7 (1st Cir. 1999).

[11] Bowler argues not only that Hitachi's claim is preempted, but also that, properly characterized as a 29 U.S.C. § 1132(a)(3)(B) action under ERISA, its claim can be brought only in Federal court. Not all ERISA actions must be heard in Federal court, and a conclusion that a State law action is preempted does not necessarily equate with exclusive Federal jurisdiction. See 29 U.S.C. § 1132(e). In this case, Hitachi's claim, which (as discussed *infra*) could likely be brought as a claim for equitable restitution under 29 U.S.C. § 1132(a)(3)(B), is subject to exclusive Federal jurisdiction. See 29 U.S.C. § 1132(e).

other appropriate equitable relief."[12] The United States Supreme Court has, in a trilogy of cases, clarified the scope of the remedial power conferred by § 1132(a)(3)(B). First, the Court explained that the term "equitable relief" referred only to those categories of relief that were *"typically* available in equity," including "injunction, mandamus, and restitution" (emphasis in original). *Mertens* v. *Hewitt Assocs.*, 508 U.S. 248, 256 (1993). In a subsequent case, the Court explained that not all relief falling under the rubric of "restitution" — the form of relief at issue here — was traditionally available in equity. *Great-West Life & Annuity Ins. Co.* v. *Knudson*, 534 U.S. 204, 212 (2002). Equitable restitution, in contrast to restitution at law, the Supreme Court later clarified, seeks "to impose a constructive trust or equitable lien on 'particular funds or property in the defendant's possession.'" *Sereboff* v. *Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 362 (2006), quoting *Great-West Life & Annuity Ins. Co.* v. *Knudson, supra* at 213.[13] Federal courts have recognized that equitable relief, in the form of a constructive trust or an equitable lien, is available under § 1132(a)(3)(B) to recover an erroneous overpayment. See, e.g., *North Am. Coal Corp. Retirement Sav. Plan* v. *Roth*, 395 F.3d 916, 917 (8th Cir.), cert. denied, 546 U.S. 862 (2005) (finding it appropriate for court "to impose a

---

[12]The relevant provision, 29 U.S.C. § 1132(a)(3), states: "A civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan . . . ."

[13]Examining the distinction between restitution at law and restitution in equity, the Supreme Court concluded:

> "[A] plaintiff could seek restitution *in equity*, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession. . . . A court of equity could then order a defendant to transfer title (in the case of the constructive trust) or to give a security interest (in the case of the equitable lien) to a plaintiff who was, in the eyes of equity, the true owner. . . . [F]or restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." (Emphasis in original.) (Citations omitted.)

*Great-West Life & Annuity Ins. Co.* v. *Knudson*, 534 U.S. 204, 213-214 (2002).

constructive trust over the overpaid benefits, permanently enjoin appellants from disposing of or transferring any of the funds still in their possession and control, and require the return of such funds"); *Lumenite Control Tech., Inc.* v. *Jarvis*, 252 F. Supp. 2d 700, 703 (N.D. Ill. 2003) (equitable restitution, by either constructive trust or equitable lien, appropriate to recover mistakenly overpaid benefits "when money or property belonging to the plaintiff can clearly be traced to particular funds or property in the defendant's possession").

Hitachi counters that it would be unable to bring a restitution action under § 1132(a)(3)(B) because Bowler did not obtain the money through any wrongdoing of his own. Relying in particular on *FMC Med. Plan* v. *Owens*, 122 F.3d 1258, 1261 (9th Cir. 1997), and *Metropolitan Life Ins. Co.* v. *Socia*, 16 F. Supp. 2d 66 (D. Mass. 1998), and their progeny, Hitachi contends that § 1132(a)(3)(B) is limited to restitution of "ill-gotten plan assets or profits." *Mertens* v. *Hewitt Assocs.*, *supra* at 260.[14] However, since those cases were decided, the law in this area has shifted. In *Sereboff* v. *Mid Atl. Med. Servs., Inc.*, 547 U.S. 356 (2006), the Supreme Court held that a plan fiduciary could bring an equitable restitution action under § 1132(a)(3)(B) to

---

[14]In *FMC Med. Plan* v. *Owens*, 122 F.3d 1258 (9th Cir. 1997), the court held that a plan fiduciary could not bring an action for equitable restitution to be reimbursed for medical bills it paid on behalf of a defendant injured in an automobile accident. After the defendant recovered a settlement for the accident from a third party, the plan fiduciary sought to enforce the terms of the plan, which provided that it be reimbursed from the defendant's third-party recovery for benefits previously paid by the plan. *Id.* at 1259. The court reasoned that a restitution under 29 U.S.C. § 1132(a)(3)(B) was not appropriate relief in part because the defendant did not obtain the plan's funds by any fraud or wrongdoing. *Id.* at 1261.

Citing *FMC Med. Plan* v. *Owens*, *supra*, the court in *Metropolitan Life Ins. Co.* v. *Socia*, 16 F. Supp. 2d 66, 72 (D. Mass. 1998), also held that a plan could not obtain equitable restitution unless there was evidence of the beneficiary's wrongdoing. In that case, the defendant collected long-term disability benefits from her insurance plan. *Id.* at 67. After obtaining more information about the defendant's Social Security insurance benefits, the plan determined that it had overpaid her and brought an action for the refund of the overpayment. *Id.* at 68. Because there was evidence that the defendant had concealed the fact of her Social Security award from the plan, recovery was warranted, but the amount of recovery was limited to the amount of the payments made from the time such wrongdoing began until the plan began to reduce the payments. *Id.* at 73.

enforce a specific provision of the plan where there was no reference to ill-gotten gains. *Id.* at 362-363.[15] The Court, making no mention of the necessity of any showing of actual fraud or wrongdoing, held that the insurance plan had appropriately brought an action for equitable restitution. *Id.* at 369. See *North Am. Coal Corp. Retirement Sav. Plan* v. *Roth, supra* at 917 (affirming imposition of constructive trust under § 1132[a][3][B] on funds overpaid by retirement plan due to accounting error); *Qualchoice, Inc.* v. *Rowland,* 367 F.3d 638, 649 (6th Cir. 2003) (plaintiff "not necessarily required to prove wrongdoing by the defendant in order to obtain relief through imposition of a constructive trust or an equitable lien" because constructive trust is based on property, not wrongs [quotation marks omitted]); *Bombardier Aerospace Employee Welfare Benefits Plan* v. *Ferrer, Poirot & Wansbrough,* 354 F.3d 348, 360 (5th Cir. 2003) (holding that plaintiff in § 1132[a][3] action not required "to show that he was the victim of actual fraud or wrongdoing as a prerequisite to obtaining a constructive trust").

It appears likely that Hitachi has a remedy under 29 U.S.C. § 1132(a)(3) — a question for a Federal court to decide. See 29 U.S.C. § 1132(e). Even if Hitachi cannot bring an action for equitable restitution under 29 U.S.C. § 1132(a)(3)(B), Hitachi's action nevertheless falls within the "scope" of ERISA's civil enforcement provision and is therefore preempted. *Danca* v. *Private Health Care Sys., Inc.,* 185 F.3d 1, 5 n.4 (1st Cir. 1999) ("The fact that ERISA does not provide the *remedy* plaintiffs seek is not relevant; all that matters is that the *claim* be within the scope" of ERISA's enforcement provision [emphases in original]). See *Aetna Health Inc.* v. *Davila,* 542 U.S. 200, 209 (2004) ("any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted").

3. *Conclusion.* We conclude that allowing Hitachi to go forward

[15]In that case, the insurance plan had covered the cost of the beneficiaries' medical expenses stemming from an automobile accident. *Sereboff* v. *Mid Atl. Med. Servs., Inc.,* 547 U.S. 356, 360 (2006). The beneficiaries filed a tort action against a third party for the costs of the accident. After they settled, the plan brought an action for restitution, claiming its entitlement under the terms of the plan to be reimbursed for medical expenses it had already paid. *Id.*

with its unjust enrichment action would present the threat of inconsistent regulation relating to the administration of ERISA plans and would constitute an "alternative enforcement mechanism." Therefore, Hitachi's action for unjust enrichment "relates to" an ERISA plan, 29 U.S.C. § 1144(a), and the judge did not err in dismissing this action based on ERISA preemption.

*Judgment affirmed.*